# Richmond

TOWN OF NARROWS *v.* GILES COUNTY AND OTHERS.

November 19, 1945.

Record No. 2932.

Present, All the Justices.

The opinion states the case.

*J. Livingstone Dillow* and *W. B. Snidow*, for the appellant.

*Walter C. Plunkett, M. P. Farrier* and *Leigh D. Williams*, for the appellees.

GREGORY; J., delivered the opinion of the court.

The town of Narrows, in compliance with the terms of sec. 2956 of the Code of 1942 (Michie), served notice upon the Board of Supervisors of Giles county and Chester J. Stafford, attorney for the Commonwealth for Giles county, that it would move the circuit court to enter an order for the annexation to the town of certain contiguous territory. The town, by its council, had theretofore adopted an ordinance in which was incorporated a description of the territory proposed to be annexed. The territory desired to be annexed included several subdivisions, which had previously been platted and maps of them duly recorded in the clerk's office of Giles county. A number of lots had been sold to purchasers. The territory contains 390 acres and lies on the north side of New River, adjacent to the present town of

Narrows, and is connected therewith by a State highway bridge.

The Virginian Railway Company intervened in these proceedings, asked to be made a party defendant and to be allowed to make defense. Many of the residents of the territory proposed to be annexed also filed a petition and answer, requesting that they be allowed to intervene and make defense to the proposed annexation. C. J. French and Ellene Givens, owners of land within this territory also requested that they be allowed to intervene and make defense to the proceedings.

Upon a hearing, the court entered an order in the proceedings by which a major part of the territory was annexed. The French and Givens lands, comprising some 47 acres, were excluded. The property of the Virginian Railway Company shown on a map known as "Virginian Railway's Exhibit No. 2", and designated as lot 14 and the eastern portion of lot 15, upon which the power plant is located, together with a strip of land adjoining lot 14 on the east, lying between the Virginian right-of-way and the river, was also excluded. However, the court did annex the western portion of lot 15 and all of lot 16, belonging to the Virginian Railway Company, and lying immediately west of the power plant.

The county of Giles, through its board of supervisors, not only failed to interpose any objection to the annexation of the said territory, but acquiesced therein.

The town of Narrows, in the prosecution of this appeal, makes no objection to the order of annexation, in so far as it relates to the exclusion of the French and Givens lands. It does object to the exclusion of the land of the railway company upon which the power house is located and the land immediately east thereof, and its exclusion is the sole subject of the present review.

Several maps and a number of photographs were introduced at the trial of the case. These maps clearly show the property sought to be annexed, and the photographs are also helpful in giving this court a better view of the situation.

The property sought to be annexed has been referred to as North Narrows. The evidence disclosed that there were at the time more than 550 people living in the territory, and there were 137 homes and 11 business houses, exclusive of the properties of the Virginian Railway Company. The evidence further disclosed that the general welfare of both the old town of Narrows and the territory proposed to be annexed would be greatly promoted by the annexation, and that a majority of the residents of the territory sought to be annexed desired the annexation. There were witnesses who testified in opposition to the annexation.

It was shown by the evidence that the conditions brought about by the war prevented the construction of more houses. In December, 1939, the American Celanese Corporation erected an establishment at the cost of more than twenty million dollars just two and one-half miles east of this territory. That enterprise, at the time of the trial, employed 3,300 people, and the testimony disclosed that in the immediate future the number of employees would be doubled. The territory desired to be annexed is the nearest available location for homes for those who are employed by that industry.

It is undisputed that there is a community of interest between the people in the old town of Narrows and in the area proposed to be annexed. Mr. R. Stuart Royer, a consulting engineer, had made a study of the situation and testified that the area embraced in the ordinance is compact, and that all of the land contained therein was necessary for the proper development and spread of the population in that community. He also testified that it was necessary and expedient that all of the territory embraced in the ordinance be annexed.

The Virginian Railway Company introduced evidence to the effect that its property sought to be annexed was valued at more than one million dollars. This property consists of a power plant and certain unimproved land recently purchased.

The court, in its opinion sustaining its order of annexation, and excluding a portion of the property of the Virginian Railway, had this to say:

"We are convinced by the evidence, without undertaking to review it in detail, that it is desirable and expedient to annex some, but not all, of the area proposed to be annexed. There is, beyond question, some territory in the present town not built upon, and which could be built upon. But the trend of growth has been and is, and apparently in the future will be, to the north side of the river. There is an urban community there now, with 137 homes and 11 business houses and some 500 people. There is such community of interest between this area and the old town that it is generally spoken of as North Narrows. Its growth and development have been largely influenced by the building and operation of the Celanese plant, which now employs some 3,300 people, and which expects in the near future to double its size and to employ more than 6,000 people. Tracts have been subdivided within the area proposed to be annexed, and there could be little doubt that new buildings will soon be erected in this area. As the evidence shows, it needs now, and will in the near future need even more, some municipal regulations, in order that it may have proper water and sewerage systems, lights, fire and police protection, proper sanitary measures, streets and alleys, and some control of building and development. As the community grows it should be under sufficient control to protect the health and comfort of its residents, its appearance, and the investment of its property owners. It seems to be strongly indicated that unless this community is taken into the town of Narrows, it will be obliged in the near future to seek an independent municipal government, which would be unfortunate for both communities. A large number of residents of this area have testified, favoring annexation and giving convincing reasons for their views."

However, the court excluded from the area the French and Givens lands, and had this to say regarding the properties of the Virginian Railway Company:

"We have also concluded, from the evidence and from the view, that the property of the Virginian Railway Company from near the west end of the power plant eastwardly, should not be included in the annexation; and that the line of annexation should run from the mouth of Hopkins hollow, westwardly with the north line of the Virginian Railway Company right of way to the west end of the rock wall along the said right of way, west of said power plant, thence southwardly to the present north corporate line on a straight line if extended to reach the east end of the rock wall on State Highway No. 8, at A. E. P. Co. pole No. 4005, 209-1439.

"There is no satisfactory showing of necessity or expediency for taking in the company's power plant or its land east thereof. None of this property is adapted to town improvement, and so far as here shown, could be expected to be used for that purpose. It is railroad property, acquired and used or held for that purpose. The land between the river and the railroad is subject to overflow, and for this and other reasons not suited to building purposes if it were desired to use it for that, which the evidence shows is not the case.

"No reason is suggested by the evidence, and none can be observed, for including this property in the annexation, other than that it is necessary in order to have a compact body of land. * * *

"In such a situation we are not permitted to include the railroad property, against the direction of the statute, merely for the reason that to do so would greatly benefit the town revenues. It would do that, beyond question. The assessed value of the power house, sub-station and machinery is more than a million dollars, more than double the present assessed value of all the property in the present town, and practically double the assessed value of all the property in the present town and in the area proposed to be annexed, exclusive of the railroad property. To include the power plant would require the railway company to pay practically twice the

amount of taxes now levied against all the other property within the old and proposed limits.

"And this would be the result without any compensating benefit to the company. It is affirmatively shown that it would profit not (at) all by being taken into the town. While this is not controlling, if there is any other reason for including it, it is important when there is no other reason. * * *

"The court must determine from the evidence the rights of the opposing parties. It must seek to do justice. We do not think it would be just or right, or within the spirit or letter of the law, to annex this property of the company and require it to pay so great a part of the tax bill of the town, when none of it is needed or could be used for town development, when it is not necessary to include it to have a compact body of land within the town, and when nothing of value would come to it from being taken into the town."

Code, 1942, sec. 2961 (Michie), provides how appeals in annexation cases are to be heard,—"An appeal may be granted by the Supreme Court of Appeals or any judge thereof to either party from the judgment of the court, and the appeal shall be heard and determined without reference to the principles of demurrer to evidence—the evidence to be considered as an appeal in chancery cases, * * * ."

The weight to be given the decision of the lower court is clearly reiterated in the case of *Henrico County* v. *Richmond*, 177 Va. 754, at pages 781-782, 15 S. E. (2d) 309. If there is credible evidence to support the judgment of the court it must be sustained. However, the court may not disregard any of the evidence or inferences which may be properly drawn therefrom, but will consider all of the evidence in the record. A presumption of correctness attends the decision of the court below on questions of fact. On the other hand, if the decision is not supported by the evidence, it should not stand.

Under Code, 1942, sec. 2962 (Michie), it is provided that "if the judgment of the circuit court be reversed on appeal,

or if the judgment be modified, the appellate court shall enter such order as the circuit court should have entered and such order shall be final."

Practically all the Virginia cases, statutes and applicable principles controlling in annexation cases are referred to in the case of *Henrico County* v. *Richmond, supra.* It is deemed unnecessary to re-examine them.

Code, 1942, sec. 2958 (Michie), provides in part:

"The court shall so draw all lines of annexation as to have a reasonably compact body of land, and shall also see that no land shall be taken into said city which is not adapted to city improvements unless necessarily embraced in said compact body of land, or which the city shall not need in the reasonably near future for development. In making its decision as to the character and extent of annexation, the court shall take into consideration as well not only the development of the city but also the loss of evenue to the county."

It is not shown that the county will lose any revenue by this annexation.

Mr. R. Stuart Royer, a witness introduced for the town of Narrows, testified in great detail. He is a consulting engineer and has had wide experience in designing towns, supervising the construction of water works, sewer treatment plants, sewer systems, and rendering advice to towns and counties in regard to zoning and planning. He made a thorough study of the plan of annexation conducted over a long period of time. He considered all of the material elements. His testimony in the main was not contradicted by any witness.

Mr. Royer testified that from his comprehensive study of the situation at Narrows there is a real need to include the entire 390 acres within the corporate limits of the town; that proper municipal planning and zoning cannot be carried out without extending the town limits; that the additional territory is essential in order to take care of the general spread of population due to the close proximity of a large

industry; that people do not wish to live where there are no municipal advantages and improvements such as schools, churches, available utilities, sewerage disposal, health and other governmental regulations. He also stated that he had viewed the proposed area and that it was necessary to annex it in order to provide residence space for the people to live; that a local business community, such as stores and the like is springing up in North Narrows, and no doubt will grow, and that such a community must be planned and zoned; a school location should be planned and acquired, and provision should be made for industrial development such as coal yards, gasoline storage tanks, and plants of like character, which would require suitable locations, and that such locations are now within the proposed area.

According to Mr. Roye, the town has planned for many improvements of the kind described if the area is brought within the corporate limits. The proposed plan expressly calls for such things as adequate water supply, sewerage disposal, street construction, lighting, policing, fire protection, and the other advantages that follow the installation of town government. The fulfillment of these plans is assured by the town council, and financial arrangements have also been planned, and the town will be able to carry out the plans.

Speaking of the properties of the Virginian Railway Company, Mr. Royer stated that the property between its tracks and the river, which the court excluded, could be developed for small industrial plants by filling in to raise the land above the high water level. He unqualifiedly testified that the properties of the Virginian Railway Company were adaptable for industrial development and that it would be very unfortunate if the town did not have an area in which to develop industry. In answer to this question propounded by the court: "You have said that you think the property of the railroad company should be taken in in order to form a compact body of land. Is there any other reason in your mind as to why it should be included in the proposed annexation?" His reply was, "I believe I mentioned that it should be included for an area of industrial development.

In other words, in my opinion, there has got to be some place for small industry provided in some way, somewhere."

So we have this competent expert testifying that the properties of the Virginian Railway Company were not only needed in order to make a compact body of land, but that they were also needed for proper municipal industrial development. We find no contradiction of this testimony, yet the court, in its opinion, stated, "No reason is suggested by the evidence, and none can be observed, for including this property in the annexation other than that it is necessary in order to have a compact body of land." This statement is against the uncontradicted testimony of the expert.

When the trial court stated that there was no satisfactory showing of necessity or expediency for taking in the power plant of the Virginian Railway Company or its land east thereof, and that none of this propety is adapted to town improvement, it ignored the only evidence which was given touching this subject. As already indicated, there is no denial in the testimony of the evidence of Royer to the effect that this property is adapted to municipal and industrial improvement, and that its incorporation within the town is both expedient and necessary.

The court also held that it is not permitted to include this property against the directive of the statute merely to greatly benefit the town revenues. Again, the court held that to include the power plant would require the railway company to pay twice the amount of taxes now levied against all the other property,—"And this would be the result without any compensating benefits to the company."

From our view of the case, instead of being against the direction of the statute to include the property, just the reverse is true when we apply the provisions of the statute to the evidence. The statute provides that it must be included if it is necessary to form a reasonably compact body of land. It also provides that it may be excluded if it is not adapted to city improvements unless necessarily embraced in said compact body of land or which the city shall not need in the reasonably near future for development. It is virtually

conceded that it is necessary to include it in order to have a compact body of land. All of the testimony is to this effect. That it is adapted to industrial development is shown beyond doubt. The industrial development, or a portion of it, has already taken place; the railway company has developed it by erecting a million dollar industry on it in which are employed forty people who reside in this community.

It is true that two employees of the railway company stated that the land of the company was not adapted to industrial improvement, but the effect of this testimony is entirely dissipated by the fact that the company has already industrialized a substantial portion of its property and witnesses have testified that the company purchased the land for the purpose of industrializing it.

The absence of compensating benefits to one who finds his property within a territory proposed to be annexed to a town is no valid reason for excluding his property. The railway company may not need or desire the services the town may be proposing to render, but the movement of the population and the order of annexation have now placed the company's power plant in a position where it is almost surrounded on three sides by the town. As pointed out so aptly in *Henrico County* v. *Richmond, supra,* at page 789, "As long as he lives in an isolated situation his desire for lesser services and cheaper government may be acquiesced in with complacency, but when the movement of population has made him a part of a compact urban community, his individual preferences can no longer be permitted to prevail. It is not so much that *he* needs the city government as it is that the area in which he lives needs it."

The right to tax does not depend on the presence or absence of benefit to the property. In a situation such as we have here, it is no answer to say that the railway company will receive no compensating benefits. And furthermore, the railway company is presumed to have known when it built its power plant immediately adjacent to the town of Narrows that it might eventually be exposed to the

liability of being taken into the corporation by annexation. See *Wade* v. *Richmond*, 18 Gratt. (59 Va.) 583, 621.

In *Henrico County* v. *Richmond*, 106 Va. 282, 299, 55 S. E. 683, 117 Am. St. Rep. 1001, this is said:

"The court is called upon by the statute to express no opinion as to its wisdom as a matter of public policy. It has only to determine upon the evidence adduced the rights of the opposing parties in the particular case before it; whether upon the facts and circumstances established by the evidence the city is entitled to any extension at all, and if any, how much, and the terms and conditions upon which such extension shall be granted."

If the evidence clearly shows, as it does here, the necessity and expediency for the annexation, the court is bound to annex the proposed territory. The wisdom and policy of the statute permitting the annexation are not for the court.

It would seem just as necessary and as expedient to take in the developed portion of the property of the railway company as it is to take in the other portions of the territory in the annexed area. In other words, just as strong a case for exclusion might be made on behalf of the owners of the territory actually annexed by the court as can be made for the exclusion of the developed portion of the properties of the railway company.

As we have already observed, the court did annex the property of the railway company lying to the west of the power plant and adjoining it. This property, known as a part of lot 15 and all of lot 16, is of the same general character as the other properties of the railway company which were excluded. This is a part of the same strip of land lying between the railroad and the river. It is adaptable to industrial development. The same reason, according to the evidence, for annexing these two lots, of which the railway company does not complain, exists for annexing the land excluded, upon a part of which the power plant is located. No logical distinction can be made between them.

We therefore are of opinion that that portion of the order excluding the property of the Virginian Railway Company, upon a part of which is located the power plant, and its land immediately adjoining on the east, is not supported by the evidence. We are further of opinion that the judgment of the trial court, under sec. 2962 of the Code, should be affirmed in part, and modified so that the line shall be run in such a manner as to include within the corporate limits of the town of Narrows the said property of the Virginian Railway Company.

Our conclusion is that there should be annexed to the town of Narrows, to become a part thereof, the territory contiguous to its present corporate limits, being a part of the territory as set forth in the annexation ordinance of the said town, and being all of the territory outside the present corporate limits of said town which lies within the following described boundary:

BEGINNING at the Virginian Railway Company's catenary pole No. W-21-N, which pole is just east of its present railway track, and running thence S. 73 degs. 30 min. east about 2,350 feet to a point in the bed of what is known as Hopkins hollow; thence running down said hollow in a general southerly direction, crossing the present State Highway Route No. 100, and crossing the right-of-way and tracks of the Virginian Railway Company, and proceeding in a straight line to the low water mark on the northerly bank of New River, intersecting the yellow line on a map filed herein, designated as "Plaintiff's Exhibit No. 1", which line conforms to the description embraced in the annexation ordinance; thence following said yellow line and the said low water mark of New River to a point a short distance east of the power plant, and thence still following said yellow line on said map across New River to the corner of the former corporate line of the town of Narrows which is on the south bank of New River; thence following said yellow line on said map in a westerly direction N. 57 degs. 53 min. west 3,489 feet to mile post No. 334 on the N. & W. railroad right-of-way, and corner to the present corporate limits

of the town of Narrows; thence N. 30 degs. 20 min. east 3,398 feet to the point of BEGINNING.

The costs of this appeal are to be borne by the Virginian Railway Company.

With the modification indicated the decree is affirmed.

*Modified and affirmed.*