# Richmond

## ROCKINGHAM COUNTY, ETC., ET AL. v. TOWN OF TIMBERVILLE.

October 12, 1959.

Record No. 4985.

Present, All the Justices.

The opinion states the case.

*Archibald G. Robertson* and *Harry Frazier, III* (*Charles E. Earman, Jr., Commonwealth's Attorney; Russell M. Weaver; Hunton, Williams, Gay, Moore & Powell; Wharton, Aldhizer & Weaver*, on brief), for the plaintiffs in error.

*Lawrence H. Hoover*, for the defendant in error.

I'Anson, J., delivered the opinion of the court.

The Town of Timberville, located in Rockingham County on a branch of the Shenandoah River, with a land area of 187 acres and a population of 320, instituted this proceeding to extend its corporate limits so as to include 724.88 acres to the south of the town and 23.60 acres to the northwest, which territory has a population of 730, numerous industries, business enterprises, and several hundred acres of farm land within its boundaries.

Rockingham County, and interveners Rockingham Poultry Marketing Cooperative, Inc., Shen-Valley Meat Packers, Inc., National Fruit Product Company, Inc., and six other business enterprises located in the annexation area opposed the proposed annexation.

The evidence was heard by a three-judge court, pursuant to § 15-152.8, Code of 1950, 1956 Replacement Volume, and from its order granting the annexation of the whole area sought we granted a writ of error and supersedeas.

The county and the interveners contend in their assignments of error that: (1) The evidence does not support the finding of the trial court that the annexation is necessary and expedient; (2) The town has not proved that it has substantially complied with the conditions of the last annexation proceeding; and (3) The court erred in holding that it had no power to require the town to compensate the county for its loss of net tax revenues.

The Town of Timberville was chartered as a municipality in 1894. It is located on both sides of the Shenandoah River, with its largest area on the north side of the river, and is fourteen miles from the City of Harrisonburg. State highway route 42 runs through the town and the annexation area.

The United States census figures show the population of the town in 1910 was 240; in 1920—277; in 1930—302; in 1940—253; and in

1950—271. In 1950, through annexation proceedings 140 persons were added to the town's population and in 1957, at the time of the institution of this proceeding, the population was 320.

Within the town's present boundaries are 54 desirable building sites in an area described by one of its own expert witnesses as most logical for residential development.

No sewerage facilities are provided by the town. About fifty houses are served by individual septic tanks and drain fields, about sixty-eight houses, business establishments, and the county-owned and operated elementary school discharge raw sewage into Honey Run and the Shenandoah River, and the few remaining houses have outside privies.

The State Water Control Board has directed the town to cease the dumping of raw sewage into Honey Run and the Shenandoah River, but it has delayed the execution of its directive awaiting the outcome of this annexation proceeding.

Sewage from many of the residences in the Driver subdivision, which is located in the annexation area, is collected and treated in a small sewage disposal plant and the remaining residences have private septic tanks. Most of the residences in the other parts of the annexation area are served by private septic tanks and drain fields. A few privies are located in the remote southeastern section.

The major industries in the annexation area have taken care of their sewerage problems by the installation of a system which is in full compliance with the regulations of the State Water Control Board.

Water has been supplied the town since 1915 by the Timberville Water Corporation, a privately owned corporation, with the town owning 50 of the 224 outstanding shares of stock. Since 1951 the town has had an option to purchase the remaining stock, but has not exercised it. The water company also supplies 93 percent of the residents of the annexation area, but it lacks the supply and distribution facilities to serve the industries in the area and they have installed a system to serve their needs at a cost of $184,000.

Fire protection in both the town and the annexation area is furnished by a volunteer fire department which was formerly located in the town but is now in the commercial development of the annexation area just south of the town line. Financial support is provided by contributions from the town, county and industries in the annexation area. Additional protection is available from the volunteer fire

department at Broadway, about two miles away, and county-owned equipment. The size of the distribution pipes of the water system does not permit efficient fire fighting.

The town has a policeman on part-time duty, while police protection in the annexation area is provided by the sheriff's department of the county, with a deputy sheriff residing in the Driver subdivision, and the Virginia State Police, which has proved to be adequate.

The town has adequate street lighting. Except for an occasional light at important intersections the residential annexation area is not lighted.

Dry trash is collected in the town once every three months, but there is no provision for the collection of garbage. Weekly trash and garbage collections are available under a private contract in the annexation area.

A first-class recreation facility, owned by the Plains District of the county and located in the annexation area, is supported by contributions of individuals, industries and the towns of Timberville and Broadway.

The development of the annexation area began in 1940 with the location of the Rockingham Poultry Marketing Cooperative, one of the interveners in this proceeding, on the river in the annexation area. Many other industries followed and they are all located in a well-defined area generally removed from the other portions of the residential annexation area as well as from the town.

The major industrial plants do not depend upon the town or the annexation area for their workers. Of the 870 regular employees of several industries in the annexation area only 4 per cent reside in the town, 10 per cent in the annexation area, and the remaining 86 per cent elsewhere. Less than 2 per cent of the residents of the annexation area are employed in the town.

Attracted by the new industries and their employees, twelve of the town's sixteen business establishments moved across the Shenandoah River just outside of the town line, and within the annexation area, leaving vacant buildings in the heart of the town.

Less than one-third of the residents of the annexation area use the few remaining businesses in the town for the purchase of gasoline, hardware, garden supplies, and the services of the barber shop and beauty parlor; while the residents of the town use the services of the bank, post office, drug store and other businesses which moved from the town to the annexation area. Sixty-four per cent of the people

in the annexation area attend churches located in the town, and 45 per cent are connected with town clubs and lodges. Children from both the town and the annexation area attend the county elementary school, which is located in the town, and the county high school in Broadway.

When one approaches the area from either side of the town he gains the impression that it is one community.

The town is free of debt, and its balance sheet shows cash in the amount of $11,000 and total assets of $22,000.

■ From our view of this case it is only necessary that we direct our attention to the first contention of the county and the interveners that the evidence does not support the finding of the trial court that annexation is necessary and expedient as required by § 15-152.11(b), Code of 1950, 1956 Replacement Volume, which reads as follows:

"(b) The court shall determine the necessity for *and* expediency of annexation, considering the best interests of the county and the city or town, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county." (Italics supplied.)

Three able and experienced trial judges, composing the annexation court, were of opinion that the annexation of the area sought was "reasonably necessary and expedient", and granted the town's motion to annex. A presumption of correctness attends the decision of the trial court on questions of fact and is binding on us unless it is plainly wrong or without evidence to support it. *Henrico County* v. *Richmond,* 177 Va. 754, 782, 15 S. E. 2d 309, 318; *Town of Narrows* v. *Giles County,* 184 Va. 628, 634, 35 S. E. 2d 808, 810; *Falls Church* v. *Board of Supervisors,* 193 Va. 112, 119, 120, 68 S. E. 2d 96, 101; *County of Chesterfield* v. *Berberich,* 199 Va. 500, 505, 100 S. E. 2d 781, 784. If, however, the evidence does not show the necessity for and expediency of annexation when considered in the light of the best interests of the county and the town, the best interests, the services to be rendered and the needs of the area proposed to be annexed, the decision cannot stand.

The burden of proof rested on the town to show that the annexation was necessary and expedient and in the best interests of the county, the town, and the territory proposed to be annexed. *Falls Church* v. *Board of Supervisors, supra,* (193 Va. at p. 118, 68 S. E. 2d at p. 100.)

■ The applicable principles in interpreting annexation statutes

have been developed by decisions of this court and are now well settled. In *Henrico County* v. *Richmond, supra,* (177 Va. at pp. 783, 784, 15 S. E. 2d at pp. 318, 319) Justice Eggleston, now Chief Justice, collected the decided principles and set out others. They will here be restated, along with another that has evolved since that decision, and are applicable to the facts of this case.

In determining the necessity for and the expediency of enlarging the corporate boundaries of a city or town consideration should be given to the health of the community, its size, its crowded conditions, its past growth, and its need in the reasonably near future for development and expansion. *Henrico County* v. *City of Richmond,* 106 Va. 282, 294, 295, 55 S. E. 683, 687, 117 Am. St. Rep. 1001.

It is important for the court to consider the community of interests between the residents of the city and the residents of the territory proposed to be annexed in determining the necessity for and expediency of annexation. *Alexandria* v. *Alexandria County,* 117 Va. 230, 241, 84 S. E. 630, 633; *County of Norfolk* v. *Portsmouth,* 124 Va. 639, 653, 98 S. E. 755, 759; *Henrico County* v. *Richmond, supra,* (177 Va. at p. 783, 15 S. E. 2d at pp. 318 and 319); *County of Norfolk* v. *Portsmouth,* 186 Va. 1032, 1040, 45 S. E. 2d, 136, 139.

To increase the revenue of a city is not a ground of itself justifying annexation, nor is the loss of revenues by the county from which the territory is to be detached a defense to the proceedings. *Warwick County* v. *Newport News,* 120 Va. 177, 193, 194, 90 S. E. 644, 649.

The court must consider the best interests of the state, the city or town, the county, and the territory to be annexed. *Warwick County* v. *Newport News, supra,* (120 Va. at p. 193, 90 S. E. at p. 649).

It is no defense to annexation for individual residents of, or industries located in, the county to assert that they do not need or desire the governmental services rendered by the city, since it is not a question of whether they need the city government but rather whether the area needs it. *Henrico County* v. *Richmond, supra,* (177 Va. at pp. 788, 789, 15 S. E. 2d at p. 321); *Town of Narrows* v. *Giles County, supra,* (184 Va. at p. 638, 35 S. E. 2d at p. 812).

Lack of a community of interest between the people of a city and the territory sought to be annexed will not bar annexation where a virile, well-managed city is involved when necessity and expediency have been proved. *Falls Church* v. *Board of Supervisors, supra,* (193 Va. at p. 118, 68 S. E. 2d at p. 100).

■ The evidence in this case shows a town seeking to annex territory four times its size in land area, including several hundred acres of farm land, and a population more than double its own. As expressed by the trial court, it may be "likened to the tail wagging the dog." The town has not outgrown its boundaries and there is no evidence to indicate that it will do so anytime in the reasonably near future. It has had practically no growth since 1910 except a small increase in land area and population through annexation proceedings in 1950. Many services usually rendered by a municipality are not present here. The town has a minimum of police protection, infrequent dry trash collections, and no garbage collections. It is confronted with the problem of sewage disposal. Its fire protection is provided through contributions from the town, county and industries in the annexation area.

It appears from the evidence that a community of interests does exist between the residents of the town and the annexation area, and while that is important in determining necessity for and expediency of annexation, it is only one element to be considered and is not controlling. Even the lack of a community of interest between a town and territory proposed to be annexed will not bar annexation "in a proper case where a virile, well-managed city is involved," when necessity and expediency have been proved. *Falls Church* v. *Board of Supervisors, supra.*

The services required to be rendered by the town to the annexation area under the trial court's order are virtually the same as those now existing in the area proposed to be annexed, except additional street lights and fire hydrants, and some streets that need to be brought up to a standard so they can be included in the State highway system. Additional fire hydrants would be of little value for effective fire fighting unless the size of the water mains and the pressure are increased, and the annexation order does not require this to be done. Under the circumstances the annexation area would gain no substantial benefits from street lights, fire hydrants and improved streets. It would gain nothing by way of schools, garbage collections, sanitary facilities, and police and fire protection. The only material benefit that would accrue to any of the parties would be additional taxes made available to the town.

It appears from the evidence that the trial court, in ordering annexation, considered primarily the preservation of the town. In determining the necessity for and expediency of enlarging the terri-

torial limits of a town the court cannot consider only the preservation of the town, but must also consider the best interests of the area sought to be annexed.

We are of opinion that the evidence does not support the findings of the trial court that the annexation of the whole area sought is necessary and expedient when considered in the light of "the best interests of the county and the * * * town, the best interests, services to be rendered and needs of the area proposed to be annexed," and the principles applicable in interpreting annexation statutes.

For the reasons given, the judgment of the trial court is reversed and the proceedings dismissed.

*Reversed and dismissed.*