# Richmond

## CITY OF ROANOKE v. COUNTY OF ROANOKE, ET AL.

March 4, 1963.

Record No. 5427.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Kossen Gregory* and *Samuel H. Williams (Randolph G. Whittle, City Attorney; Richard T. Edwards,* on brief), for the plaintiff in error.

*W. H. Jolly* and *John H. Thornton, Jr. (Edward H. Richardson, Commonwealth's Attorney; Leonard G. Muse; R. S. Kime,* on brief), for defendant in error, County of Roanoke.

*(Furman Whitescarver, Sr.; Furman Whitescarver, Jr.,* on brief, for defendant in error, Roanoke County Sanitation Authority.)

SNEAD, J., delivered the opinion of the court.

On December 10, 1959, the city of Roanoke, pursuant to the provisions of Title 15, Chapter 8, of the Code of 1950, as amended, instituted annexation proceedings against the county of Roanoke. Roanoke County Sanitation Authority was made a party defendant.

The county and the authority filed responsive pleadings to the city's petition. They, along with numerous intervenors, vigorously opposed annexation of the territory sought. From the order denying annexation of any of the areas and dismissing the petition, the city of Roanoke appealed.

The annexation court was constituted in accordance with the provisions of § 15-152.8. It was composed of three able jurists and each judge had previous experience in the trial of annexation cases. After a number of pre-trial conferences the hearing on the issues involved commenced on February 8, 1961. The county's motion to dismiss the proceedings at the conclusion of the city's evidence was overruled by a divided court. The proceedings concluded on May 19, 1961, at which time the final order complained of was entered. It provides in part:

"* * * after carefully considering the views taken of the area proposed to be annexed and the views of the City and County, and upon weighing and evaluating the evidence presented in this case, including the various and sundry exhibits introduced by the parties hereto and the arguments and memoranda of counsel, [the court] is unanimously of the opinion that considering the best interests of the County, the City, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the County, that the burden of proof of showing the necessity for and expediency of annexation of the area sought, or any part thereof, has not been borne by the City of Roanoke and that annexation of such area, or any part thereof, is not necessary or expedient, it is, accordingly, ORDERED that the petition for annexation filed by the City of Roanoke be, and the same is hereby dismissed at the costs of the City of Roanoke, * * *."

According to the city, the principal question involved in this appeal is whether the evidence established necessity for and expediency of annexation of any portion of the areas requested.

The printed record contains 2,011 pages and there are numerous exhibits not included in the printed record. It is manifest that it is not practicable to set out all of the evidence adduced, not only because of its volume but also for the reason that much of the evidence was technical, statistical and hypothetical.

On November 9, 1959, the city council of Roanoke enacted by a five to two vote an ordinance declaring the necessity for and expediency of annexation of certain territory in Roanoke county ad-

jacent to the corporate limits of the city on the north, south and west, which embraced 31.23 square miles. The territory sought was described by metes and bounds and the reasons for the necessity and expediency of annexation of it were set forth therein. A general statement of the terms and conditions upon which the city desired to annex and the provisions planned for the future improvement of such territory were stated. The ordinance directed the city attorney, the city manager and special counsel engaged for the purpose to institute the necessary legal proceedings, which was done on December 10. All of the proceedings thereafter appear to be regular and no question is raised as to them on appeal.

The city of Roanoke has expanded its corporate boundaries eight times since the initial annexation proceeding brought in 1882. The last proceeding was concluded in 1949, when 11.83 square miles were annexed. From that time to 1960 the city's population increased by 4,594 making a total population of approximately 97,000. During the same period the population of Roanoke county, including the towns of Vinton and Salem, increased from 41,486 to 61,462. The city's present corporate boundaries contain 26.18 square miles and the county has an area of 276 square miles. There were 17,357 persons residing in the 31.23 square miles requested to be annexed of which 3,853 were school children. Ninety per cent of the children ride school buses. The assessed values in such territory in 1960 amounted to $40,619,920. The areas comprise about 40 per cent of the county's taxable revenues and approximately 28 per cent of the school population.

Much of the territory sought by the city is served by sewer lines operated by the Roanoke County Sanitation Authority, which under a contract with the city deposits the raw sewage into the city's sewage disposal plant. The contract was entered into at the instance of the city. The county had contemplated constructing its own disposal plant, but this arrangement with the city was more economical for all concerned. According to James A. Beavers, secretary and treasurer of the Authority, the Authority has about 2,300 connections in the annexation areas. The city serves 267 users directly and there are 3130 septic tanks and 180 privies.

The county has no water system of its own. In the proposed areas to be annexed there are 27 private water suppliers with 2850 customers. The city serves 556 and the remainder of the inhabitants are served by wells and other sources.

The towns of Vinton and Salem located in the county have their own fire departments. The county is also served by volunteer fire departments located therein. The city has cooperated when its services were needed. The city has 1872 fire plugs and 34 of them are located in the county principally on Hershberger road, which is along the present corporate line.

The county has a sheriff, 10 deputy sheriffs and 2 police officers. The employment of two additional police officers has been authorized. There are 12 state troopers assigned to the county for traffic control and investigations.

The county furnishes garbage collections for a small monthly charge.

Section 15-152.11, Code 1950, as amended, provides in part:

"(a) The court shall hear the case upon the evidence introduced as evidence is introduced in civil cases.

"(b) The court shall determine the necessity for and expediency of annexation, considering the best interests of the county and the city or town, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county."

Generally, the fundamental question in annexation cases is one of fact to be decided in accordance with the mandate of subsection "b", *supra.* In previous decisions we have stated the principles to be followed and the tests to be applied in determining whether there is the "necessity for and expediency of" annexation. Recently, in *Rockingham County* v. *Timberville,* 201 Va. 303, 110 S. E. 2d 390, and in *Fairfax County* v. *Town of Fairfax,* 201 Va. 362, 111 S. E. 2d 428, we discussed those principles and tests in some detail. See also *Henrico* v. *City of Richmond,* 177 Va. 754, 15 S. E. 2d 309.

"The weight to be given the decision of the lower court is clearly reiterated in the case of *Henrico County* v. *Richmond,* 177 Va. 754, at pages 781-782, 15 S. E. (2d) 309. If there is credible evidence to support the judgment of the court it must be sustained. However, the court may not disregard any of the evidence or inferences which may be properly drawn therefrom, but will consider all of the evidence in the record. A presumption of correctness attends the decision of the court below on questions of fact. On the other hand, if the decision is not supported by the evidence, it should not stand." *Town of Narrows* v. *Giles County,* 184 Va. 628, 634, 35 S. E. 2d 808.

The onus is upon the city or town to show the necessity for and

expediency of annexation, taking into consideration the best interests of the county, the city or town, and the area sought to be annexed. *Rockingham County* v. *Timberville, supra,* 201 Va. at p. 307, 110 S. E. 2d at p. 394; *County of Chesterfield* v. *Berberich,* 199 Va. 500, 502, 100 S. E. 2d 781.

In *Fairfax County* v. *Town of Fairfax, supra,* we said:

"In determining whether annexation is necessary and expedient for a city or town, factors to be considered are its size, its crowded condition, its past growth, its need in the reasonably near future for development and expansion, the health of the community, whether the terms proposed are reasonable, fair and just, and whether proper provision will be made for future management, *Henrico County* v. *City of Richmond,* 106 Va. 282, 284, 295, 55 S. E. 683, 117 Am. St. Rep. 1001; *Alexandria* v. *Alexandria County,* 117 Va. 230, 234, 84 S. E. 630; and *Rockingham County, etc., et al.* v. *Town of Timberville, supra,* 201 Va. 303; the result of the development promised by the combination of the resources of two urban communities under a single political unit in the light of the best interests of the State, the town, or city, the county, and the territory proposed to be annexed, *Warwick County* v. *Newport News,* 120 Va. 177, 193, 90 S. E. 644; *County of Norfolk* v. *Portsmouth,* 186 Va. 1032, 1045, 45 S. E. 2d 136; community of interest, if any, between the town or city and the area proposed to be annexed, *Alexandria* v. *Alexandria County, supra,* 117 Va. page 241; *County of Norfolk* v. *Portsmouth, supra,* 186 Va. page 1045; *Falls Church* v. *Board of Supervisors, supra,* 193 Va. page 118, and financial ability of the town or city to provide for development after annexation, *County of Fairfax* v. *Alexandria,* 193 Va. 82, 85, 68 S. E. 2d 101.

\*      \*      \*      \*      \*      \*      \*

"\* \* \* No single factor controls in determining the necessity and expediency of annexation. \* \* \*." 201 Va. pp. 367, 368, 111 S. E. 2d pp. 432, 433.

Succinctly stated, the city alleges in the annexation ordinance adopted and filed in the clerk's office that annexation of the areas sought is necessary and expedient, because (1) they are substantially residential, commercial and industrial and would supply the city's needs for expansion; (2) the proposed annexation areas and the present city constitute a compact body of land peculiarly adaptable to city growth and government; (3) the areas need urban government to provide the usual city services for their development; (4) the

long-range plans for public improvements in undeveloped or partially developed areas must be begun before complete urbanization; (5) portions of the areas are not being adequately served by the county with reference to water, sewers, garbage and trash collections, police and fire protection, and annexation will provide improved school facilities; (6) a community of interests exists between the areas and the city; (7) the portions of the areas which are served by sanitary sewers are dependent upon the city's sewage disposal plant; and (8) portions of the areas are dependent upon the city's water system.

The county contends in its answer that annexation of the proposed areas sought is "not necessary or expedient considering the best interests of the County and City, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the County"; that such annexation would adversely affect the county's financial resources, causing a reduction in services rendered or alternatively increase its tax rate, and that it is not feasible under the city's sources of revenue presently available to undertake annexation of the proposed areas and render the required. services to such areas and the city without an excessive increase in tax rates to render even a reduced standard of services.

Expert witnesses, city officials and others were called by the city in an attempt to prove its case that annexation of the areas sought was necessary and expedient. Harland Bartholomew and William M. Johnson, civil engineers, testified as experts. City officials asserted that the city was financially able to support annexation of the territory requested. The county also called competent experts, county officials and numerous other witnesses, including a member of the city council, to testify in its behalf.

The trial court in its opinion found as a fact that there were no crowded conditions or lack of sufficient residential and business building sites in the city, and that based on the development and growth of the city since the 1949 annexation of 11.83 square miles, no necessity or expediency had been shown for enlarging the city's corporate limits on account of crowded conditions or lack of available lands for future growth. The undisputed evidence was that about one-third of the present corporation limits was vacant land. City witnesses testified that much of the land was not suitable for any type of development purposes. The trial court took extensive views of the county, the areas sought to be annexed and also of the city where it found that "much of it [vacant land] is available for residential and

business purposes." It stated: "A view of the City is convincing that many acres included in the annexation area of 1949, and otherwise are still not developed, * * *."

In *County of Chesterfield* v. *Berberich, supra,* we said:

"* * * On appeal, such an opportunity for observation and study of the *locus in quo* is not afforded us, and thus the annexation court had this peculiar means of ascertaining the very right of the case, in addition to having heard the evidence *ore tenus. County of Norfolk* v. *Portsmouth,* 124 Va. 639, 644, 98 S. E. 755; *Falls Church* v. *Board of Supervisors, supra,* (193 Va., at p. 119, 68 S. E. 2d, at pp. 100, 101.)" 199 Va. p. 503.

The court found that the "current budget" of the city was out of balance "even after reducing appropriations for schools, streets, and other essential municipal functions." It pointed out that many capital improvements, including bridges, additions to the courthouse, etc., were "badly needed" which would cost "many million dollars", and that no satisfactory explanation was offered as to why the budget was out of balance or the needed improvements were not being made or plans adopted for making such improvements. The court observed that the "present condition of the City indicates either a weak financial condition, or an unwillingness to make available funds for needed improvements"; and that "no realistic financial plan was ever presented in evidence."

According to city manager Arthur S. Owens, there is a great need for extensive capital improvement. When asked about four specific projects, namely drainage, new auditorium to replace the one that burned, bridges and a new municipal building, he said he thought the cost estimate of "$15 million was rather conservative."

The city contends here, as it did in the court below, that its financial situation is not a factor to be considered in awarding or denying annexation, nevertheless it alleges the record shows that it is financially able to afford annexation. It argues that it is the function of the court after having found the necessity for and expediency of annexation, to compute the amount of compensation to be granted the county and to decree annexation on that basis. Then, it says, that the city may accept or reject annexation as provided by § 15-152.14.

There was undisputed evidence that the city has never defaulted in the payment of its obligations; that it has issued and has outstanding 13 million dollars of obligations against a legal margin in excess of 30 million dollars and has always enjoyed a low interest rate on its bonds

because of the high rating it enjoys. However, councilman Benton O. Dillard testified that he was opposed to annexation "principally, on account of the financial problems of the City." He further stated that he was a member of the city council in 1948 and was in favor of the annexation proceedings instituted at that time, and that certain promises made with regard to drainage in the annexed area had not been fulfilled by the city.

We disagree with the city's contention that its financial situation is not a factor to be considered in awarding or denying annexation. In *Fairfax County* v. *Town of Fairfax, supra,* 201 Va. at p. 367, we said that in determining the necessity for and expediency of annexation a factor to be considered is the "financial ability of the town or city to provide for development after annexation." We also stated in *County of Norfolk* v. *Portsmouth,* 186 Va. 1032, 1049, 45 S. E. 2d 136, 143: "* * * Such an enlarged annexation, therefore, cannot be held to be 'expedient' as required by the statute if the city is not in a financial condition to undertake it. * * *."

The trial court further found that both the city and county have excellent school systems, and that the evidence offered to show the city system could absorb the school children in the proposed annexation areas "was not convincing." The court pointed out that the city stated it desired to purchase some of the county schools which were not in the areas sought to be annexed; that the city does not operate school buses to transport its children to and from school, while the county does render such service; that the absorption of the children into the city system would require the city to increase the size of existing school buildings and those under construction, as well as erect additional new buildings. It concluded: "Certainly no advantages could be obtained by the school children in the areas proposed to be annexed over those they now enjoy, and many disadvantages readily appear from a consideration of the evidence before the Court."

Included among other findings of the court are that a community of interests exists between the residents of the city and the areas proposed to be annexed; that much of the territory sought is rural or farm land; that the county is rendering all the services needed by the areas sought; that sanitary sewer needs in such areas are being met by Roanoke County Sanitation Authority or by other approved methods; that there is no problem with regard to health; that police and fire protection are adequate; that the proposed annexation would have "a material and detrimental impact" on the county; that 89 per cent

of the freeholders of the areas proposed to be annexed opposed annexation, while no person testified in favor of it; and that Roanoke county has a balanced budget and is "effectively and economically operated."

During oral argument counsel for the city stated that it relies principally on three grounds in this appeal. First, the evidence shows that the city needs growth space; second, since a substantial portion of the requested area has become urbanized and the best interests' requirements of the statute have been satisfied, the court erred in denying its annexation; and third, the trial court was bound by the testimony of county expert Thomas J. McDonald given in response to a question propounded by the court *sua sponte*, and thus the court erred in not finding that annexation of certain areas embracing about 7 square miles was necessary and expedient.

Dr. Harland Bartholomew, one of the city's expert witnesses, testified that about 34 per cent of the city's area was in vacant land and that cities of comparable size averaged between 25 and 30 per cent. He said, there are certain "rugged topographical areas that can't be built upon", which will make the percentage higher than what might be called the average city in vacant land. A fair inference from his testimony is that the city needs growth space. William M. Johnson also was of opinion the city needed growth space for certain purposes. According to Werner Sensabach, the city's director of planning, the city's vacant land area is about 31 per cent of the total area. He calculated that there were 475.8 acres in farm land and that of the 5,248.7 vacant acres 1500.08 acres were in residential land and 1670.7 acres were in industrial land. County expert McDonald was in substantial accord with the amount of vacant land in the city as stated by Bartholomew and Sensabach. McDonald testified that as a result of his "extensive" and "careful studies" the city at the present time does not need any additional land for residential, commercial or industrial purposes and that any future needs it may have were not as urgent or imminent as claimed.

Aside from considering the evidence adduced relating to the issue of the city's need for growth space, we must not overlook the fact that the court made extensive views of the city before reaching the conclusion that there were no crowded conditions or lack of available lands for future growth. We find that there was credible evidence to support the court's conclusion on this issue.

We shall discuss next the city's contention that since a sub-

stantial portion of the requested area has become urbanized and the best interests' requirements of the statute have been satisfied, the court erred in denying its annexation.

The city relies heavily on the principle that it is the policy of the Commonwealth that urban areas should be under urban government. In the recent case of *County of Chesterfield* v. *Berberich, supra,* 199 Va. at p. 503, we said:

"We reaffirm our holding that generally the policy of the Commonwealth of 'placing urban areas under city government and keeping rural areas under county government' should prevail. *County of Norfolk* v. *Portsmouth,* 186 Va. 1032, 1044, 1045, 45 S. E. 2d 136, 141. In determining the policy, however, the question oftimes arises as to what territory is to be deemed rural and what is to be classified as urban. * * *."

The city rightfully concedes that urbanization alone is not enough to entitle it to annexation. It must be shown that annexation of such areas is necessary and expedient, "considering the best interests of the county and the city * * *, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county." The State's interest is that which promises "great development". *Warwick County* v. *Newport News,* 120 Va. 177, 193, 90 S. E. 644. Thus, urbanization is an important factor to be considered, but not a conclusive factor.

The evidence discloses a difference of opinion as to whether the territory sought to be annexed is urban. Bartholomew said that all of the area is urban in character and will become more urban as the city continues to grow. McDonald described the territory as "suburban." The trial court, without stating that any part was urban, said much of the territory sought was rural or farm land. It is not practicable to establish a yardstick whereby an area may be measured as urban in all annexation cases. However, in the present case it is fair to state that the record shows some portions of the territory sought can be classified as urban.

With regard to the annexation of such urban areas, the crucial question in determining necessity and expediency therefor is whether the best interests' requirements of the statute have been satisfied. Suffice it to say that on this issue the evidence is conflicting and we cannot hold that it conclusively shows that such requirements have been met.

■ Finally, the city contends that McDonald's testimony in response to a question by the court *sua sponte* was binding on the court.

McDonald, a county expert witness, was requested to suggest to the court, from the viewpoint of the city as if employed by it, areas he thought he could support and that the court "could justify including in the boundaries" of the city. About two hours later he returned to the stand and testified as to two alternate lines. He said the differences in the size, population and assessed values of the alternate areas were negligible and that each encompassed about 7 square miles. He referred to the areas within the alternate lines as "appropriate" or "reasonable" and did not say that the incorporation of the areas was necessary and expedient. His testimony merely expressed an opinion from the opposite point of view that some areas could reasonably or appropriately be included in the city. The court then requested William M. Johnson, a city expert witness, to suggest to the court, from the county's viewpoint as if employed by it, a line that would minimize the impact of annexation on the county. The line he drew included all of McDonald's areas and more besides, but considerably less than the city sought under its ordinance.

The city argues that even disregarding the evidence of urbanization and best interests, the court itself established by uncontradicted testimony, that the areas which the experts, McDonald and Johnson, agreed upon "meet all the qualifications of necessity and expediency" and such areas should be annexed.

We do not agree that the court was bound by the testimony of either expert witness in response to the hypothetical questions posed by the court. The court had a right to accept this testimony or reject it. It was for the court to decide what weight should be given their expert testimony. *Ford* v. *Ford*, 200 Va. 674, 679, 107 S. E. 2d 397. The record shows that the court disregarded, as it had a right to do, the conclusions of the experts with regard to the hypothetical questions and rested its findings upon other evidence adduced. *Ches. & O. R. Co.* v. *Barger*, 112 Va. 688, 692, 72 S. E. 693.

Here, all conflicts in the evidence have been resolved against the city. The trial court held by a unanimous decision that the city had not borne the burden of proof of showing the necessity for and expediency of annexation of the territory requested by its ordinance, or any part thereof. Even though we might have taken a different view of the evidence if sitting on the court below and awarded the city a portion of the territory sought, that is not enough. We do not consider testimony *de novo*. The trial court's decision comes to us with a presumption that it is correct and we cannot disturb the

judgment if there is credible evidence to support it. *Henrico* v. *City of Richmond, supra,* 177 Va. p. 782. Upon a consideration of the entire record, we find that there is credible evidence to support the judgment of the trial court and it must be sustained.

The county of Roanoke, having prevailed on this appeal, will recover its costs in this court. Section 15-152.15, 1956 Replacement Vol. 3, Code 1950.

*Affirmed.*

BUCHANAN AND I'ANSON, JJ., dissenting.

BUCHANAN, J., dissenting:

Thomas Joseph McDonald, a consulting civil engineer, who had worked as engineering consultant for counties in at least nine prior annexation proceedings in Virginia, was employed by Roanoke County in that capacity in this proceeding. He testified for the County and was a witness of major importance. His testimony occupies some one hundred fifty pages in the printed record. At the conclusion of his direct examination counsel for the County asked him if as an expert witness he had an opinion as to whether the annexation proposed by the City was necessary or expedient. His response is characterized by the County in its brief as a "masterful recapitulation of the fatal weaknesses in the City's case".

He stated his opinion to be that such annexation was not necessary and expedient, and listed eight reasons for that opinion. The first one was that the City's present need for additional land "is neither as extensive or as urgent as it has been stated in the Annexation Ordinance". His second reason was that the City's future needs for land were "neither as extensive nor as imminent as the Ordinance has alleged". His third reason was that "the area proposed to be annexed, being as extensive as it is, does not really constitute a compact body of land". His remaining reasons just as clearly were related to the area which the city proposed to annex. This area was 31.2 square miles.

Later, and after his cross-examination had been completed, Judge Snead, a member of the annexation court, suggested that Mr. McDonald had viewed the case from the County's standpoint, and Mr. McDonald agreed. Judge Snead then asked him if he would take a pointer and draw a line "that you think would be justified, on one of these maps? * * you have broken down all of these study

areas—and would you care to state which one of these, or which of these study areas that you would think that the Court could justify including in the boundaries of this City?"

The witness responded that he would be "happy to do that" if the court wanted him to, but it would take him several minutes because he would have to keep in mind "the same factors that the Court must keep in mind—namely, the interest and requirements of the City in the area proposed to be annexed, and the rest of the County. * * I don't think that I could properly do this from the City's point of view only. * * I think I would have to consider, as well as I could, the interests of both of the parties in this particular case." Judge Snead said, "All right, sir; will you do that?" The witness replied, "Yes, sir."

Later Mr. McDonald appeared and stated to the court that he had spent the last two hours or so re-examining all the data from his study of the entire situation and had discussed certain details of this data with his colleagues; that he was unable to make a final decision between two alternative lines which he was prepared to put on the map for the court and to discuss fully. He said the differences in the two lines were negligible in terms of the areas, populations and assessed values, so "I will proceed with the first line". He said his first line would include Study Areas 1, 2, 4-A, 5, 6-B, 7 and part of 9-B. He stated his reasons for including each of these areas and placed on a magnetic map cards designating the areas referred to. While he said that he was satisfied that the City did not need any additional land for development and could support a substantially higher population density than it had, "yet I can at least understand the opinions and the judgments of the governing body to the effect that they would like to see that population density reduced," and he concluded his discussion as follows:

"This is the first annexation area that I think is appropriate. It contains a total of 6,226 population; 5,216 acres; it has an average population density of 1.19 persons per acre. The school enrollment is 1,138; and assessed values, other than public services, $12,278,145.00. If an area of that acreage, and that population, were annexed to the present City, the average population density of the enlarged City would then be 4.70 persons per acre. The reduction would be 1.1 per acre. Does the Court have any questions while those pieces are on the board?"

Mr. McDonald then presented his alternative line and explained

the differences between the two proposals, which were negligible, he said, in the respects stated. He then added:

"One more general thought that I have and that is that following whatever annexation the Court decides upon, there will occur in this Roanoke Valley for a number of years a situation which will never be repeated again as I see it in the near future." He referred, he said, to the kind of "limited functional unification" that had been going on for sometime in the field of government services.

After Mr. McDonald had so testified, Judge Snead stated that the court thought it appropriate to ask William Martin Johnson (the civil engineer who had been employed by the City and had testified at length in support of the proposed annexation), to perform a similar task. He was asked to assume that he had been employed by the County and felt that he had to draw an annexation line and to minimize the impact of it on the County; then, after conferring with his technical associates, to tell the court how he would draw such a line. Next day Mr. Johnson testified before the court that he concurred in many of the lines selected by Mr. McDonald, and he defined and testified with respect to the area which should be annexed, considering "the interest of the City, the areas that are developing urban, and the balance of the County". The area designated by him included all of the area designated by Mr. McDonald and some additional land, constituting an area of 7,215 acres, with a population of 9,983, and property values estimated at $20,700,000 exclusive of public service corporations.

I agree that the trial court was not bound as a matter of law by the testimony of these two expert witnesses, but I disagree that as a matter of fact the court had a right to reject and ignore the testimony given by the witness, Mr. McDonald. It is clear to me that that witness, who had made a careful and painstaking study of the areas involved, extended over a period of more than a year, thought that some annexation ought to be declared and expected that it would be. He was the County's witness; he had testified cogently in its behalf against annexing the large area requested by the City. But the court in effect put him on his honor to advise it, from his knowledge and broad experience, what territory the City ought to have. Out of his integrity and sense of responsibility he spoke frankly and testified it would be proper to annex to the City the area he designated, and he gave to the court in support of his conclusions reasons that in my judgment should have been convincing to the court.

As said by the City's witness, Johnson, annexation is not an exact science. It necessarily involves questions of opinion and good judgment. Where the issue is to be determined from conflicting testimony, we sustain a judgment of the trial court when it is supported by credible evidence. But there is conflicting evidence in all such cases and we have not hesitated to reverse a judgment which we considered to be contrary to the evidence. *Rockingham County* v. *Town of Timberville*, 201 Va. 303, 110 S. E. 2d 390, is a recent example; and in *Town of Narrows* v. *Giles County*, 184 Va. 628, 35 S. E. 2d 808, cited in the court's opinion, it was said that if the decision is not supported by the evidence it should not stand.

The decision in the present case that no territory should be annexed is not, in my opinion, supported by the evidence. The County's witness, McDonald, speaking as an unbiased witness for the court and from a thorough study of the whole situation, gave clear and convincing reasons for the annexation of the areas described by him along the western perimeter of the City, containing in the aggregate 5,216 acres. That same area was included in the larger area which the City's witness, Johnson, also speaking as an unbiased witness for the court, and from his thorough study, testified should be annexed. The testimony and judgment of these two court witnesses, supported by the evidence offered by the City, covering nearly a thousand pages of the printed record, in my opinion required the conclusion that this area described by witness McDonald should be annexed to the City. I would reverse the judgment and decree the annexation of that area. Code § 15-152.20.

MR. JUSTICE I'ANSON joins in this dissent.