## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

CITY OF ALEXANDRIA v. COUNTY OF FAIRFAX.

November 29, 1971.

Record No. 7602.

Present, All the Justices.

*Horace H. Edwards, William R. Cogan (V. Floyd Williams, City Attorney for the City of Alexandria; Mays, Valentine, Davenport & Moore, on brief), for plaintiff in error.*

*Robert C. Fitzgerald (Donald C. Stevens, County Attorney for the County of Fairfax; Myron C. Smith; Fitzgerald, Smith & Davis, on brief), for defendant in error.*

I'ANSON, J., delivered the opinion of the court.

This annexation proceeding was instituted in December 1967 by the City of Alexandria against the County of Fairfax to annex ap-

proximately 8.31 square miles, or 5320 acres, of land in the county immediately adjacent to the city.

The duly constituted three-judge annexation court spent three full days viewing the area sought to be annexed, other areas of the county, and the city and its facilities. It then heard evidence *ore tenus* over a period of six weeks. In a unanimous written opinion, the court held that the city had not carried the burden of showing the necessity for and expediency of the annexation, and dismissed its petition. We granted the city a writ of error to the judgment.

Alexandria, founded in 1747 on 60 acres of land, is an old and historic city. At the time this action was instituted it had grown to a city of 127,000 people (109,841 according to 1970 census figures) covering 15.35 square miles, or 9760 acres, of territory. This growth has been made possible through nine annexations, the last being in 1952 when the area of the city was about doubled and its vacant and unimproved land was increased 49 percent.

The amount of vacant and unimproved land now in the city was estimated at 15 percent. Approximately 50 acres of vacant land are in the waterfront area, which could support a $139 million development if certain improvements and zoning changes were made by the city. Excluding the vacant and unimproved land, the city is fully developed and has the highest population density of any city in the State. Approximately 220 acres in the city are classified as slum or blighted areas, and plans are underway to rehabilitate these areas through urban renewal projects.

The city's property assessables have increased 45 percent since 1964. However, the annual rate of increase of tax assessables dropped from $48 million in 1967 to $28 million in 1969. Building permits have fallen 60 percent in the last four years, from $42,339,000 to $16,971,-000, and during that period real estate taxes have risen 23 percent.

The city has a council-manager form of government and renders all the services customarily found in a well-run city. Its school system is regarded as one of the best in the country.

The area sought for annexation is a highly developed urban area. It has a population of 33,000, of which 6460 are children of school age. There were 1500 acres of vacant and undeveloped land in the area when this action was instituted, and at the time the case was heard, during the fall of 1969, a portion of the 1500 acres was being developed and plans were underway for additional development. Approximately 600 acres of the vacant land is subject to "land slippage"

and thus could be of doubtful use for development. A large part of the vacant land is suitable for commercial and industrial development, but its lack of accessibility to Route 495, the Capitol Beltway, presents some problems. Nineteen percent of the residents and taxpayers living in the area work in Alexandria, 35 percent in the county, and the remaining percentage in Washington, D.C. Approximately 73 percent of the residents shop in the county. Seven elementary schools within the area serve students residing both within and without the area. While there is no high school within the area, the county had planned to construct one. The county provides the residents with the same excellent services that the city furnishes its residents and some additional services not provided city residents.

The county operates very efficiently under the county executive form of government. It has a population of 449,586 people, and contains 406 square miles, or 259,540 acres. The county has grown 400 percent in population since 1950 and is the fastest growing county in Virginia. Its annual growth rate alone exceeds the population of the annexation area. The county has been able to meet the service demands for health centers, parks, libraries, hospitals, schools, etc., through numerous bond issues. The bonded indebtedness of the county is $206 million, and bonds in the amount of $163 million have been authorized but not sold. Like Alexandria's, the county's school system has an excellent rating. While there are only seven schools in the proposed annexation area, annexation would affect twelve other county schools.

The city proposes to extend to the annexation area all services it is now providing for its own citizens. It proposes to increase fire and police protection by adding more full time employees, to provide trash and garbage collection without cost to the residents, and to spend $5600 per mile for maintenance of streets instead of the $2600 now spent by the State Highway Department. It would build two new schools in the area and pay the county for educating the children until it could complete these new facilities. If the city could not reach an agreement with the county to operate the schools during the interim period, students would attend the schools already established in the city.

Over 5000 residents and taxpayers of the area affected by the proposed annexation intervened in opposition to the city's petition. None of the residents of the area intervened in favor of annexation.

An expert, testifying on behalf of the city, said that the city needed

more vacant land than exists in the proposed annexation area, but the county's growth pattern has been such that for annexation to include the desirable amount of vacant land the city would have to reach five or six miles into the county, and that was not feasible. He also said that the proposed annexation would not solve the city's problems, but would afford only temporary relief, after which "the city is in trouble."

In deciding whether the corporate limits of a particular municipality should be extended, the annexation court

"* * * shall determine the necessity for and expediency of annexation, considering the best interests of the county and the city or town, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county." Code § 15.1-1041(b).

■ The principles to be followed and the tests to be applied in arriving at the determination of the issues in an annexation case are so well established by our numerous decisions that it would serve no useful purpose to repeat them here. See *Rockingham County* v. *Timberville*, 201 Va. 303, 307-08, 110 S.E.2d 390, 394 (1959); *Fairfax County* v. *Town of Fairfax*, 201 Va. 362, 367, 111 S.E.2d 428, 432 (1959); *City of Roanoke* v. *County of Roanoke*, 204 Va. 157, 162, 129 S.E.2d 711, 714 (1963).

■ On appeal, a presumption of correctness attends the decision of the annexation court on all questions of fact, and its decision will not be disturbed by us unless it is plainly wrong or without credible evidence to support it. *Johnston* v. *County of Fairfax*, 211 Va. 378, 384, 177 S.E.2d 606, 610 (1970); *County of York* v. *Williamsburg*, 204 Va. 732, 736, 133 S.E.2d 520, 522-23 (1963).

■ Although the city concedes that the area proposed for annexation is receiving adequate services, it says the area needs additional fire and police protection and more money expended on the maintenance of its streets, all of which the city proposes to provide. The evidence does not support the city's contention that those additional services are needed.

The city argues that it has proved as a matter of law the necessity for and expediency of the annexation because the evidence shows (1) that the city has a high density population; (2) that it needs vacant land in order to grow and thus avoid stagnation; (3) that it needs an increased tax base; and (4) that annexation is in the best interest

of the county since it will be compensated for its loss and will be relieved of the area's increasing demands for services.

The evidence does show that the city has a high density population, but annexation would not be the solution of that problem.

The city says that it needs the annexation area for potential growth and to provide an area for moderately priced homes to attract young adults and for commercial and industrial development. But the limited amount of vacant land in the area, and the lack of potential for development of a part of it, would not permit the city to realize its stated objectives with respect to growth. The city's own expert witness recognized that the city would acquire a limited amount of vacant land, but he said it was not feasible to extend the city's line farther into the county. He also said that annexation of the proposed area would not solve the growth problem, but would only be a temporary answer, and thereafter the city would be in trouble.

The city's contention that it needs an increased tax base is not a ground of itself justifying annexation. *Rockingham County* v. *Timberville, supra,* 201 Va. at 303, 110 S.E.2d at 394.

Lastly, the city argues that it would be in the best interest of the county to grant the annexation. However, the court found that the county's loss of the proposed annexation area would adversely affect the sale of county bonds periodically issued for necessary public improvements in the rapidly growing county, as well as create serious disruption in seventeen of the county's schools.

The annexation court's findings are supported by credible evidence. The city did not carry the burden of proving the necessity for and expediency of annexation, considering the best interests of the county and the city, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county. Accordingly, the judgment is

*Affirmed.*