# Richmond

CITY OF FALLS CHURCH V. BOARD OF SUPERVISORS OF FAIRFAX COUNTY, ET AL.

December 3, 1951.

Record No. 3826.

Present, All the Justices.

The opinion states the case.

*La Rue Van Meter, Edwards, Rogers and Cudlipp* and *Lytton H. Gibson,* for the appellant.

*Frank L. Ball, John F. Bethune, Arthur ·C. Stickley, II, Robert J. McCandlish, Jr., Hugh B. Marsh* and *Gardner L. Boothe,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This is an appeal granted the City of Falls Church in an annexation proceeding prosecuted under Title 15, Chapter 8, of the Code of Virginia, 1950, against the county of Fairfax. The annexation ordinance adopted pursuant to section 15-125 of the Code was duly advertised and, together with the petition, was served upon the county.

The annexation court, composed of resident Judge Paul E. Brown, Judge J. R. H. Alexander of the twenty-sixth circuit, and Judge Burnett Miller, Jr. of the ninth circuit, appointed pursuant to section 15-133 of the Code to hear and determine the issues, duly convened and began the hearing on June 19, 1950. The county of Fairfax and numerous interveners filed answers to appellant's petition, all vigorously stressing their opposition to annexation.

The presentation of the case followed the usual course employed in the trial of these cases, and was terminated on July 20, 1950, when the court unanimously entered the following order:

"This matter having come on to be heard, and the court having considered all pleadings in this case, and all the evidence introduced, and having made a personal inspection of the territory involved, and having heard arguments of counsel, and the court having duly considered the same, being of the unanimous opinion that the annexation prayed for by the petitioner is not necessary or expedient, considering the best interests of the county, the city and the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county;

"It is therefore, the judgment and order of this court that the prayer of the said petition be, and is hereby denied, and that this case be, and the same is hereby dismissed. * * *"

This final order is the basis of the appeal.

The City of Falls Church was incorporated as a town in 1875 by the General Assembly of Virginia, Acts 1875, Chapter 316. It originally contained within its borders land from both Alexandria (now Arlington) and Fairfax counties. In 1887 the boundaries of the town were contracted when 450 acres were returned to Fairfax county by the General Assembly. See Acts 1887, Chapter 364.

Again, in 1936, upon petition filed by 91 of the 123 qualified voters, that portion of the town located in Arlington was removed from the corporate limits and made a part of Arlington county. *Falls Church* v. *County Board,* 166 Va. 192, 184 S. E. 459.

On August 16, 1948, the population of Falls Church exceeded 5,000 and under proceedings in the Circuit Court of Fairfax county an order was entered making it a city of the second class. Within a year from this time an annexation suit was instituted in which the city sought to annex substantially the same area contended for in the instant case. This suit was withdrawn at the request of the city attorney because of improper publication of the annexation ordinance.

On February 23, 1950, the city filed the present suit. City of Falls Church has a population of 7,526 and embraces 1,305 acres. The annexation ordinance seeks to take in an additional 6,880 acres with a stipulated population of 14,000.

Annexation law has developed in Virginia as follows:

Prior to the adoption of the Constitution of 1902, the only method available for the enlargement of the boundaries of cities and towns was by recourse to the General Assembly. Annexation was then considered exclusively a legislative function.

The Constitutional Convention of 1902 passed Article VIII, Section 126, which provided:

"* * * the General Assembly shall provide by general law for the extension and contraction from time to time of the corporate limits of cities and towns; and no special act for such purpose shall be valid."

Pursuant to the above provision the 1904 session of the General Assembly passed an Act providing:

"* * * whenever it is deemed desirable by any city or town to annex any territory to such city or town, its council shall declare by an ordinance * * * that it desires to annex certain territory * * * and set forth the necessity for or expediency of

annexation, and the terms and conditions upon which it desires to annex such territory, as well as the provisions which are made for its future management and improvement. * * *'' Acts 1904, pages 144, 148; Va. Code, 1904, § 1014a(1).

Section 1014a(3), Virginia Code of 1904, provides:

''The court, without a jury, shall be held and presided over by a judge of some circuit court of this State other than the circuit in which either the city desiring the territory to be annexed or the said territory to be annexed lies, and remote therefrom, said judge to be designated by the Governor of this State, and the court * * * shall ascertain and determine the necessity for or expediency of annexation, * * *.''

By enacting this general law it will be noted that the legislature delegated the authority over annexation to a judge of a remote circuit.

Section 15-133 of the Code of 1950 provides:

''The court, without a jury, shall be held and presided over by three judges, as follows: The judge of the circuit court of the county in which the territory sought to be annexed lies; the judge of the circuit court of the city to which the territory is to be annexed, if the territory is to be annexed to a city having a circuit court, and a judge of some circuit court in this State remote from the territory to be annexed, to be designated by the Chief Justice of the Supreme Court of Appeals. * * *''

The court in the instant case was created under this section, and such courts exercise, to a degree, legislative as well as judicial functions.

The 1904 Act required the city to prove ''the necessity for or expediency of'' annexation before the court was authorized to order it. *Henrico County* v. *Richmond,* 106 Va. 282, 295, 55 S. E. 683, 117 Am. St. Rep. 1001.

The General Assembly, in 1928, (Acts 1928, page 1076) amending Code, § 2958 (now Code, 1950, § 15-135), changed the previous requirement for annexation from necessary *or* expedient to necessary *and* expedient. In this connection, the Act provides:

''* * * and if the majority of the court shall be satisfied of the necessity for *and* expediency of such annexation, * * * an order shall be entered providing for the annexation of such territory, but if a majority of the court shall be of the opinion that no an-

nexation is necessary *or* expedient, the motion to annex shall be dismissed. * * *'' (Italics supplied)

This change in the wording of the statute was recognized in *County of Norfolk* v. *Portsmouth,* 186 Va. 1032, 1045, 45 S. E. (2d) 136, 142, where Mr. Justice Staples, speaking for the court, cites the revised statute and states: ''Therefore, the evidence must sustain the finding of the Circuit Court that it is both necessary *and* expedient.'' (Italics supplied)

Section 15-135 of the 1950 Code of Virginia contains language added by the General Assembly in 1948. (Acts 1948, page 589.) The language now employed three times in this Code section reads: ''* * * considering the best interests of the county, the city and the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county, * * *.''

The city's petition alleges that it desperately needs the area embraced in the ordinance; that most of the available land within its borders has been built up, and that its future growth will be impeded unless it is permitted to take in more territory. It is further alleged that the area needs the services which the city can give. The city charges that the citizens within the boundary sought to be annexed lack or are deficient in such services as (1) police protection (2) recreational facilities (3) fire protection (4) streets, sidewalks, curbs and gutters (5) library facilities (6) planning and subdivision control (7) garbage and trash collection (8) water supply (9) health and welfare service (10) schools (11) sewers, and (12) storm drains.

It is intimated that the city is proficient in the above services and that it intends to share these blessings with the residents of the annexed territory if and when the territory is placed under its jurisdiction.

The answers filed by the county and the interveners, composed of 800 residents of the city and 665 residents of the area proposed to be annexed, and the Alexandria Water Company, deny the allegations in the petition.

Appellees contend that the City of Falls Church is not furnishing urban governmental services to its residents and that its failure to furnish these services to its present compact city is an indication that it cannot improve the services to the residents of the area sought to be annexed. Appellees further assert that the residents of this area are now living under a modern

government furnished by Fairfax county and the services which they now receive are far superior to those enjoyed by the residents of the city.

They further charge that ''there is no necessity or expediency'' for annexation, that the residents of the area sought do not come from any overflow from Falls Church, they do not work in Falls Church but on the contrary are citizens employed by the Federal government in the city of Washington living in Fairfax county. It is further charged that Falls Church is void of industries and furnishes little if any employment for its citizens, and that there is a complete lack of community of interest between the citizens of Falls Church and those within the area proposed to be annexed.

The further contention is made that the City of Falls Church has practically reached its debt limit and is unable financially to take care of its proper municipal needs, and that it will be impossible for the city to finance the extensive program contemplated in this proceeding.

Officials of the city and other witnesses were called to prove the city's case. Among these were two eminent city planning experts who testified to the needs of the city and expressed the opinion that the annexation program as contemplated was necessary and expedient and that the city was financially able to carry the ordinance provisions into effect.

Witnesses introduced by the county and the interveners also included two eminent experts, both capable and experienced in annexation cases. These witnesses, with numerous others, including an ex-mayor of the city, testified that the annexation was neither necessary nor expedient and strongly indicated that the city government as presently constituted was incapable of governing the present city and therefore it was inconceivable that it could properly govern a city of the first class. These witnesses challenge the city's claim to each of the aforementioned twelve municipal services which the city contends it is now supplying, and their evidence as well as the cross-examination of witnesses introduced on behalf of the city shows that these services are lacking in many instances.

It would serve no good purpose here to criticize these services. Neither is it necessary to compare the government of Fairfax county with the municipal government of the city. Suf-

fice it to say that the evidence on this subject was in direct conflict and the burden was on the city to prove its case.

Generally annexations are brought about by the growth of cities from within, caused by the expanding of the industrial development through the enlargement of manufacturing plants located within their borders or the bringing in of new enterprises. In such cases the population at times becomes overcrowded and people move beyond the corporate limits to live. These citizens moving from the city to the suburbs continue to work in the city, looking to the city for their livelihood. They shop there, seek amusement there, enter into the city's social life, and receive the benefits of city dwellers without paying for the privilege. In such cases there is a definite community of interest between the people of the city and the suburb which is an outgrowth of the city. In these cases if the city can meet the requirements of section 15-135 of the Code of 1950 annexation will be ordered.

In the instant case it is not unfair to state that the city of Falls Church owes its increase in population to nothing that has happened within its borders. The growth in both areas is traceable directly to the location of the Federal government in the District of Columbia. The whole area including the City of Falls Church is a satellite of the city of Washington. We do not here intend to imply that this should bar annexation in a proper case where a virile, well-managed city is involved, and where it has been ascertained and determined that ''the necessity for and expediency of annexation, considering the best interests of the county, the city and the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county'' have been proved. However, the community of interest feature clearly enters into the picture and should be considered. See *Alexandria* v. *Alexandria County,* 117 Va. 230, 84 S. E. 630; *County of Norfolk* v. *Portsmouth,* 124 Va. 639, 653, 98 S. E. 755; *Henrico County* v. *Richmond,* 177 Va. 754, 783, 15 S. E. (2d) 309, and *County of Norfolk* v. *Portsmouth,* 186 Va. 1032, 1040, 45 S. E. (2d) 136.

Admittedly, the burden of proof here rests upon the city. As indicated above, the record discloses conflicting evidence on practically all important issues and in our opinion the city has failed to meet the burden of proof required. A careful reading

of the record discloses ample reasons for the annexation court's decision denying the relief prayed for.

Aside from what the printed record discloses the annexation court, composed of able, experienced trial judges, heard the evidence *ore tenus,* they visited and studied the areas under consideration, saw the physical properties under the control of the city,—the streets, the schools, the library, the jail, the fire-fighting equipment, and had an opportunity to observe and study the various other services allegedly furnished by the present municipal government. The court then observed and studied the character of services which the citizens in the area sought to be annexed were receiving from the county of Fairfax, and thus had opportunities for observation and study which are not afforded us.

We stated in *County of Norfolk* v. *Portsmouth, supra,* 124 Va. 639, 644, 98 S. E. 755: ''And the statute law on the subject having made special and eminently fair and just provisions for the constitution of the trial courts, and such courts having peculiar opportunities to ascertain the very right of the case, by a view of the *locus in quo,* and by the examination of witnesses in the presence of the court, their conclusions and decisions on matters of fact are not to be disturbed unless plainly wrong, notwithstanding the provision of the statute that an appeal in such cases shall be heard 'without reference to the principles of demurrer to evidence; the evidence to be considered as on appeal in chancery cases.' * * *And while the appellate court, under the statute last quoted, will not disregard any of the evidence or inferences which may properly be drawn therefrom, but will consider all of the evidence in the record, yet, in such court, a certain presumption of correctness will attend the decision by the court below of such questions of fact, which is greater than would adhere to it if based on testimony not delivered in the presence of the trial judge.''

After quoting the foregoing, Mr. Justice Eggleston said in the case of *Henrico County* v. *Richmond, supra,* 177 Va. 754, 782, 15 S. E. (2d) 309: ''Since that opinion this court has held in a number of cases that a decree in a chancery cause appealed from, upon a conflict of the evidence heard in open court, has the same weight as the verdict of a jury and is binding on us unless it is plainly wrong or without evidence to support it. *Hartman* v. *Melfa Banking Co.,* 162 Va. 433, 436, 174 S. E. 653; *Howren* v.

*Howren,* 164 Va. 141, 143, 178 S. E. 678, 679; *Williamson* v. *Johnson,* 164 Va. 632, 637, 180 S. E. 310, 312; *Planters Nat. Bank* v. *Heflin Co.,* 166 Va. 166, 172, 184 S. E. 216, 218; *Allen* v. *Allen,* 166 Va. 303, 304, 186 S. E. 17; *Morison* v. *Dominion Nat. Bank,* 169 Va. 191, 204, 192 S. E. 707, 712.''

"If there is credible evidence to support the chancellor's judgment we must accept it, just as we must accept a jury's verdict sustained by evidence which it might have believed.'' *Planters Nat. Bank* v. *Heflin Co., supra* (166 Va., at page 172, 184 S. E., at page 218).

The same principles apply to the decisions of the trial court in annexation proceedings. *Henrico County* v. *Richmond, supra,* (177 Va., at page 783).

For the reasons herein expressed we are of the opinion that the unanimous decision of the annexation court in this case is plainly right and the order denying annexation and dismissing the case is

*Affirmed.*