# Richmond

Edward C. Johnston, Et Al. v. County of Fairfax, Et Al.
Elizabeth A. Blystone, Et Al. v. County of Fairfax, Et Al.

November 30, 1970.

Record Nos. 7185 and 7186.

Present, All the Justices.

*Richard R. G. Hobson* (E. A. Pritchard; Bauknight, Pritchard, McCandlish and Williams, on brief), for appellants in Record No. 7185.

*Ralph J. Luttrell,* on brief, for appellants in Record No. 7186.

*Robert C. Fitzgerald; J. Strouse Campbell; William R. Cogar* (La-Rue Van Meter, City Attorney for the City of Falls Church; David J. Mays; Charles R. Langen; Donald C. Stevens, County Attorney; Fitzgerald, Smith & Davis; Herrell, Campbell and Lawson; Mays, Valentine, Davenport & Moore, on brief), for appellees in Record Nos. 7185 and 7186.

I'ANSON, J., delivered the opinion of the court.

This proceeding was instituted on October 6, 1966, pursuant to the provisions of § 15.1-1034, Code of 1950, as amended, 1964 Repl. Vol., by petitioners Edward C. Johnston and one hundred and eighty-one other persons, constituting more than fifty-one per centum of the qualified voters residing in an area of Fairfax County adjacent to the City of Falls Church, seeking its annexation to the City of Falls Church. The city and the county were made parties defendant. The city favored annexation of the area, and the county opposed it. Subsequently, Elizabeth A. Blystone and twenty-three other persons, residents of the city, intervened in favor of the annexation, and J. W. Marriott, Jr., Richard E. Marriott, and Eugene Hooper, owners of a tract of land containing approximately 33 acres zoned for high-rise apartments and commercial use in the area sought to be annexed, intervened in opposition.

The case was heard by the Hon. Barnard F. Jennings, the Hon. Ernest P. Gates, and the Hon. Hamilton Haas. The court held, Judge Haas dissenting, that the petitioners had not carried the burden of proving the necessity for and expediency of the annexation, and dismissed the petition. A final order was entered on October 28, 1968, and we granted separate appeals to petitioners (Record No. 7185) and to intervenors Elizabeth A. Blystone and others (Record No. 7186), who will hereinafter be referred to as the appellants.

The errors assigned are the same in both appeals. Appellants contend that the court erred:

(1) In requiring the appellants to prove that the annexation was in the best interests of the county;

(2) In requiring appellants to prove that the services offered by the city are equal to or better than the services rendered by the county; and

(3) In holding that the necessity for and expediency of the annexation had not been proved.

The city, in its brief and in the oral argument before us, supported the contentions of the appellants.

The area sought to be annexed is a 200-acre tract, bounded on the south and southwest by Leesburg Pike (State Route No. 7), on the north and northwest by the right of way of Interstate Route No. 66, on the east by the Arlington County line, and on the south by the existing northern line of the City of Falls Church. Most of the area is zoned for single-family residences. Two Falls Church city schools are located in the area. The two schools and a recreation area connected with one of them occupy 22 percent of the land. The vacant land consists of three parcels of approximately 44 acres.

The streets in the annexation area are extensions of the city's system. For the most part they lack curbs, gutters and sidewalks. There are no street lights in the area except those erected by the city near its schools. Trash and garbage are collected by the county and private collectors. The area is sewered partly by the county and partly by the city, and sewage is treated in the county's sewage treatment plant. The city purchases water from an agency of the federal government and sells it to the residents. Fire protection is provided by the city's volunteer fire department, which is integrated with the county's fire department and is financed by the city and Fairfax and Arlington Counties. The county provides police protection.

Falls Church became a city of the second class on August 16, 1948. In 1958, upon a petition filed by the city in the circuit court, a small portion of its territory was "de-annexed." The city operates efficiently under a city manager form of government. Approximately 11,500 persons live within its two-square-mile area. There were 114 acres of unimproved land in the city when this proceeding was instituted. The city has an efficient and well-managed school system, but it does not provide a vocational training program and special classes for mentally retarded and physically handicapped children, nor bus transportation for its school children. It has a library, recreation areas, and equipment for removal of snow from its streets. Approximately one-third of its streets do not have curbs and gutters. The city does not have a sewage disposal plant, a sanitary land-fill, or

an incinerator, and is dependent upon the county through contracts to render the services provided by such facilities. It has no hospital, and its residents use the hospital facilities of Fairfax and Arlington Counties and the District of Columbia. It has a part-time health officer and its welfare cases are handled through the Department of Public Welfare of the county. The business area of the city is composed mostly of retail stores. A major portion of its residents shop in large shopping centers and department stores in the adjacent counties of Arlington and Fairfax. One witness for the proponents testified that the city is "attempting to maintain the single-family residential character of the city with compatible business and commercial areas, but at the same time maintain that city which its citizens seem to feel is a village."

The County of Fairfax is a large county with an area of approximately 400 square miles and a population of over 416,000. It operates under the urban county executive form of government, and provides to its residents all the services and facilities that are usually furnished by a municipality, except in its undeveloped rural areas. It has an excellent school system and provides vocational training classes and classes for mentally retarded and physically handicapped children. It has a large and efficient police department, a large library with many branches throughout the county, and a park authority to administer its many parks. In 1967 it embarked on a county-wide program of street lighting. Under this program all the residential areas and major highway systems will be completely lighted. Schools and other public facilities are in close proximity to the proposed annexation area. One of its schools is located in the City of Falls Church. The county furnishes bus transportation to its school children. It has no equipment for removal of snow from its streets, but this service is performed efficiently by the State Highway Department.

There is some community of interest between the annexation area and the city. Approximately 19 percent of the people in the annexation area work in Falls Church. Some of the residents attend church in the city, are members of its civic clubs, use the city's library, bank there, are served by its doctors and dentists, and patronize its stores. The evidence shows that upon completion of the large shopping center at Tysons Corner in Fairfax County, which was nearing completion when this case was heard, a great number of the residents of the city and the annexation area will find it convenient to shop there. .

When this proceeding was instituted all the rights of way for the construction of Interstate 66 had not been acquired, but this had been accomplished when the case was heard. There is some testimony that when construction of the interstate is completed it will isolate the annexation area from the rest of the county, and its residents will be more dependent upon the conveniences offered by the city. Other testimony shows that it would have the opposite effect, and make all parts of the county and the entire metropolitan Washington, D.C., area more accessible.

Appellants contend that the court erroneously required them to prove that the annexation was in the best interests of the county. They say § 15.1-1041, Code of 1950, as amended, 1964 Repl. Vol., does not impose this burden upon them, since usually a county suffers some harm when its territory is annexed and it would be impossible to prove that a loss of its territory is in the county's best interests.

Subsection (b) of Code § 15.1-1041 sets forth the general guide for determining whether the corporate limits of a particular municipality should be expanded. It reads as follows:

"The court shall determine the necessity for and expediency of annexation, considering the best interests of the county and the city or town, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county."

The court's majority opinion, relying on what we said in *Rockingham County* v. *Timberville*, 201 Va. 303, 307, 110 S.E.2d 390, 394 (1959), and *Falls Church* v. *Board of Supervisors*, 193 Va. 112, 118, 68 S.E.2d 96, 100 (1951), stated that the burden of proof is upon the proponents of annexation to show that annexation is necessary and expedient and in the best interests of the county, the city, and the territory to be annexed.

In *City of Roanoke* v. *County of Roanoke*, 204 Va. 157, 161-62, 129 S.E.2d 711, 714 (1963), we said that the onus is upon the city to show the necessity for and expediency of annexation, taking into consideration the best interests of the county, the city, and the area sought to be annexed.

What was obviously meant by the language used in the three cases above referred to and in the present case was that the proponents of annexation must prove the necessity for and expediency of annexation, and in making this determination the court is to take into con-

sideration the best interests of the county, the city, and the territory to be annexed, and to "balance the equities" of all interests affected by the proceeding.

It appears from the opinion of the majority of the annexation court that after it considered the best interests of all the entities affected and balanced the equities, it found that the appellants had not proved the necessity for and expediency of the annexation in that it was not in the best interests of the city and the territory to be annexed. Hence we find no justification for a reversal of this case on the point raised.

█ The appellants next argue that the court's majority opinion erroneously construed Code § 15.1-1041(b), by requiring the city to prove that the municipal services of the city were equal to or better than services offered by the county.

Appellant's argument is based on a statement, taken out of context, in the written opinion of the majority of the court, that "with certain minor exceptions, the services furnished by Fairfax County are equal to or superior to the services rendered by the City of Falls Church." The statement appears in the opinion after a discussion of that part of the evidence relating to the comparative abilities of the city and county to provide services to be rendered and to the needs of the area sought to be annexed.

Code § 15.1-1041(b) requires the court to consider the "services to be rendered and needs of the area proposed to be annexed." This the court did, and its comment after comparing the abilities of the city and county to render service to and take care of the needs of the annexation area does not indicate that the majority of the court required appellants to prove that the services to be rendered by the city would be equal to or superior to the services rendered by the county. Hence we do not agree with the argument of appellants.

Lastly, the appellants contend that the court erred in holding that they had not borne the burden of proving the necessity for and expediency of annexation.

█ Appellants say that since this proceeding was instituted by "79 percent" of the qualified voters of the area sought to be annexed, their wishes "should be given the weight of a jury verdict on the question of need and services to be rendered." We do not agree.

While the wishes of the qualified voters of an area proposed to be annexed should be given consideration in determining the best interests of the parties affected, such do not control the decision of the

court. *Fairfax County* v. *Town of Fairfax*, 201 Va. 362, 369, 111 S.E.2d 428, 433 (1959).

Before an annexation court may extend a city's boundaries the court must be satisfied, and the evidence must support the findings, that the proposed annexation is both necessary and expedient. *County of Norfolk* v. *City of Portsmouth*, 186 Va. 1032, 1045, 45 S.E.2d 136, 142 (1947). This principle is applicable in all annexation proceedings, whether they are brought, as in the present case, by fifty-one per centum of the qualified voters of the area sought to be annexed under Code § 15.1-1034, or by a city under the provisions of Code § 15.1-1033. *Mowry* v. *City of Virginia Beach*, 198 Va. 205, 209, 93 S.E.2d 323, 326 (1956).

The principles to be followed and the test to be applied in arriving at a determination of the issues in annexation cases have been stated in numerous decisions of this court. They are well settled, and we do not deem it necessary to repeat them in this case. See summaries of the principles in *Rockingham County* v. *Timberville, supra*, 201 Va. at 307-08, 110 S.E.2d at 394; *Fairfax County* v. *Town of Fairfax, supra*, 201 Va. at 367, 111 S.E.2d at 432; and *City of Roanoke* v. *County of Roanoke, supra*, 204 Va. at 162, 129 S.E.2d at 714.

No single factor controls in determining the necessity for and expediency of annexation. *Fairfax County* v. *Town of Fairfax, supra*, 201 Va. at 368, 111 S.E.2d at 433.

■ On appeal, a presumption of correctness attends the decision of the annexation court on all questions of fact. The decision will not be disturbed by us unless it is plainly wrong or is without credible evidence to support it. *City of Roanoke* v. *County of Roanoke, supra*, 204 Va. at 161, 129 S.E.2d at 714; *Rockingham County* v. *Timberville, supra*, 201 Va. at 307, 110 S.E.2d at 393-94.

In addition to hearing the evidence *ore tenus*, the annexation court judges visited and studied the areas affected. They saw the physical properties under the control of the city and had an opportunity to observe and study the services rendered by the municipality. They observed and studied the services that were being rendered by the county and the needs of the area sought to be annexed.

A majority of the court, in holding that the city had not proved the necessity for and expediency of annexation, found as a fact from the evidence and a view of the areas affected that the county is providing a high quality of municipal services to the proposed annexation area; that there is no showing that the city was better able to govern

the area than the county; that the construction of Interstate 66 would not isolate the annexation area, but on the contrary would provide the residents of the area ready access to a greater portion of Fairfax County as well as to the entire metropolitan Washington, D.C., area; that a large proportion of the residents of the annexation area are not employed in the city, and thus would not necessarily use the city's streets and other facilities in connection with their employment; that the city has no particular plans for the development of the comparatively small, undeveloped part of the annexation area and it could not serve any substantial purpose toward future city development; that while there is some community of interest between the annexation area and the city, there is a very decided community of interest with the county and other surrounding jurisdictions; and that from a consideration of all the interests affected it would not be in the best interests of the city and the territory proposed to be annexed to grant the annexation.

We find that there is credible evidence to sustain the holding of the majority of the annexation court, and the judgment is

*Affirmed.*