## Richmond

CITY OF ROANOKE v. COUNTY OF ROANOKE, ET AL.

COUNTY OF ROANOKE v. CITY OF ROANOKE, ET AL.

CITY OF SALEM v. COUNTY OF ROANOKE, ET AL.

BLANCHE WEDDLE, ET AL. AND ROY C. KINSEY, SR., ET AL. v. COUNTY OF ROANOKE, ET AL.

August 30, 1973.

Record Nos. 8095, 8096, 8097 and 8098.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*William R. Cogar; John S. Davenport, III (James N. Kincanon, City Attorney for the City of Roanoke; John S. Barr; William L. Martin; Mays, Valentine, Davenport & Moore; Martin, Hopkins & Lemon,* on brief), for appellant in Record No. 8095.

*W. H. Jolly; Robert C. Fitzgerald; Myron C. Smith (John N. Lampros, Commonwealth's Attorney for Roanoke County; Lawrence C. Musgrove; Fitzgerald & Smith,* on brief), for appellees in Record No. 8095.

*Robert C. Fitzgerald; Myron C. Smith (John N. Lampros, Commonwealth's Attorney for Roanoke County; Fitzgerald & Smith,* on brief), for appellant in Record No. 8096.

*William R. Cogar; John S. Davenport, III; W. H. Jolly (James N. Kincanon, City Attorney for the City of Roanoke; John S. Barr; William L. Martin; Lawrence C. Musgrove; Mays, Valentine, Davenport & Moore; Martin, Hopkins & Lemon,* on brief), for appellees in Record No. 8096.

*W. H. Jolly (Kime, Jolly, Clemens & Canterbury,* on brief), for appellant in Record No. 8097.

*William R. Cogar; John S. Davenport, III; Robert C. Fitzgerald; Myron C. Smith (John N. Lampros, Commonwealth's Attorney for Roanoke County; James N. Kincanon, City Attorney for the City of Roanoke; William L. Martin; Mays, Valentine, Davenport & Moore; Fitzgerald & Smith; Martin, Hopkins & Lemon,* on brief), for appellees in Record No. 8097.

No opening brief on behalf of appellants in Record No. 8098.

*John N. Lampros, Commonwealth's Attorney for Roanoke County; Robert C. Fitzgerald; Myron C. Smith; James N. Kincanon, City Attorney for the City of Roanoke; John S. Davenport, III; William R. Cogar; John S. Barr; William L. Martin; Fitzgerald & Smith; Mays, Valentine, Davenport & Moore; Martin, Hopkins & Lemon,* on brief, for appellees in Record No. 8098.

Cochran, J., delivered the opinion of the court.

These appeals are from the final order entered February 29, 1972, by the annexation court in consolidated cases in which the City of Roanoke (Roanoke), the City of Salem (Salem), the County of Roanoke (County), and certain individual petitioners were parties. The County surrounds Roanoke and Salem, and a narrow urban corridor separates the Cities.

In 1965, qualified voters, proceeding under the provisions of Code § 15.1-1034[1], filed a petition styled *Ivan R. Young, et al.* v. *Town of Salem and County of Roanoke* for the annexation of an area to the Town of Salem. While *Young* was pending, other qualified voters filed a petition styled *Blanche Weddle, et al.* v. *City of Roanoke and County of Roanoke* for the annexation to Roanoke of certain territory, including a portion of the *Young* annexation area. The trial court granted the annexation sought by the *Young* petitioners. On appeal by Roanoke, an intervenor, we reversed and remanded the case to the trial court with directions to consolidate and hear *Young* and *Weddle* together, as required by Code § 15.1-1037(a)[2]. *City of Roanoke* v. *Young*, 208 Va. 618, 159 S.E.2d 661 (1968).

In 1966, qualified voters filed a petition styled *Roy C. Kinsey, et al.* v. *City of Roanoke and County of Roanoke* for annexation of other County territory to Roanoke.

On January 1, 1968, the Town of Salem became the City of Salem. Thereafter, qualified voters filed a petition styled *Robert M. Willis, et al.* v. *City of Salem and County of Roanoke* for annexation of County territory to Salem.

On June 9, 1969, Roanoke initiated a proceeding styled *City of Roanoke* v. *County of Roanoke* for annexation of the entire County, including the Town of Vinton which adjoins Roanoke on the east.

By order entered January 6, 1970, the five cases were consolidated, after which the duly designated three-judge annexation court heard

---

[1] Code § 15.1-1034 provides in pertinent part:

"Whenever fifty-one per centum of the qualified voters of any territory adjacent to any city or town . . . shall petition the circuit court of the county, stating that it is desirable that such territory be annexed . . . and setting forth the metes and bounds thereof . . . the case shall, except as otherwise provided in this chapter, proceed in all respects as though instituted in the manner prescribed in § 15.1-1033."

[2] Code § 15.1-1037(a) provides:

"When proceedings for the annexation of territory to a city or town are pending and a petition is filed seeking the annexation of the same territory or a portion thereof to another city or town, the case shall be heard by the court in which the original proceedings are pending. The court shall consolidate the cases and hear them together, and shall make such decision as is just taking into consideration the interests of all parties to each case."

and overruled all preliminary pleas, motions and demurrers. The proceeding was stayed during the pendency of the County's petition for a writ of prohibition which we dismissed. *County of Roanoke* v. *Hoback, et al.*, 211 Va. xlv (1970). The annexation court then reconvened to dispose of the consolidated proceeding on the merits.

After viewing the territory and hearing Roanoke's evidence the trial court sustained the County's motion to strike the City's evidence. Roanoke then moved for permission to introduce evidence for the annexation of less than the entire County, and the court took this motion under advisement until after the petition cases were heard. Roanoke renewed the motion from time to time and proffered evidence as to two specified areas, Hunting Hills and Reed Mountain. The trial court ultimately denied the motion.

When the *Young* petition was heard, the court granted the County's motion to strike petitioners' evidence. As no error has been assigned to the dismissal of the *Young* petition, we need not consider it further.

The court dismissed the *Willis* petition on motion of petitioners' counsel before any evidence was introduced. Roanoke and Salem objected.

After the *Weddle* and *Kinsey* petitioners presented their evidence, the trial court overruled the County's motion to strike the evidence and permitted Roanoke to introduce evidence relating to only these petition areas as to compensation to the County for loss of net tax revenue, assumption of County debt, reimbursement for public improvements, and proposed expenditures after annexation. After hearing all the evidence, including that of the County, the trial court, one judge dissenting, awarded Roanoke .435 square miles of the 2.33 square miles sought in the *Weddle* petition and 2.16 square miles of the 2.87 square miles sought in the *Kinsey* petition.

Roanoke, Salem and the *Weddle* and *Kinsey* petitioners have assigned error to the manner in which the five cases were consolidated and heard. Roanoke has assigned error to the action of the court in striking the City's evidence, in denying the City's motion to present evidence for annexation of lesser areas, and in refusing to award the entire *Weddle* and *Kinsey* areas. The *Weddle* and *Kinsey* petitioners have also assigned error to the court's failure to order annexation to Roanoke of the entire area sought in their petitions. Salem has assigned error to the court's dismissal of the *Willis* petition.

The County has assigned numerous cross-errors challenging the jurisdiction of the annexation court in the *Weddle* and *Roanoke* cases and the award of parts of the *Weddle* and *Kinsey* areas to Roanoke.

## I

### Jurisdictional Questions.

(a) Sufficiency of *Weddle* petition.

The *Weddle* petition was filed on May 19, 1966. Special commissioners appointed by the trial court reported that on the date of filing the signatures of 467 (61.528%) of the qualified voters in the area proposed to be annexed were affixed to the petition. They further reported that 65 qualified signers requested removal of their names on or before June 30, 1966, reducing the total to 52.964% as of that date, and that an additional 35 qualified signers filed a petition on or before June 30, 1966, requesting that their properties not be annexed. The commissioners did not remove these 35 signatures from the annexation petition. The County excepted to the Commissioners' Report on the ground that the 467 qualified signers should have been reduced by the 35 petitioners as well as by the 65 signers who had requested removal. This reduction would have left an insufficient percentage, 48.5%, of the qualified voters on the petition as of the return date. The trial court overruled the County's exception.

In *Gonzales* v. *Wyatt*, 202 Va. 402, 117 S.E.2d 669 (1961), we considered a similar problem. There, voters filed a petition for a referendum, and the trial court appointed special commissioners to determine whether the petition contained the signatures of the required number of qualified voters. Before the commissioners reported their findings, the trial court permitted various petitioners to withdraw their signatures, thereby reducing the number below the statutory minimum. We reversed, noting that, in addition to the filing of the petition, other action had been taken when the signers undertook to withdraw their signatures. We held that jurisdiction had attached when the order appointing special commissioners was entered, and that the trial court therefore erred in permitting the withdrawals. We did not find it necessary to decide whether a petitioner could withdraw his signature after the petition had been filed but before it had been acted upon.

We now hold that in an annexation proceeding under Code § 15.1-1034 the determination whether a petition contains the required number of signers is to be made as of the date of filing. Although the authorities are not in agreement on the subject, *see* Annot., 27 A.L.R.2d 604, 608 (1953), Annot., 126 A.L.R. 1031, 1036 (1940), we prefer this rule which eliminates uncertainty and comports with our rules governing the commencement of other civil litigation. Rules 2:2, 3:3(a). As the signatures of more than 51% of the qualified voters were affixed to the *Weddle* petition on the date of filing, the trial court did not err in overruling the County's exception to the Commissioners' Report and its plea to the jurisdiction based on the same exception.

In another challenge to the sufficiency of the *Weddle* petition the County moved for dismissal on the ground that the territory sought was not determined until after the petition was signed. The trial court correctly overruled this motion. Code § 15.1-1034 requires that the petition when filed set forth the metes and bounds description of the territory. There is no requirement that a map or a metes and bounds description be exhibited to each signer in advance or that the description not be revised before the petition is filed. Here again the petition speaks as of the date of filing.

(b) Annexation of entire county.

The County asserts that the Roanoke ordinance seeking annexation of the entire County, including the Town of Vinton, violates § 61[3] of the applicable 1902 Virginia Constitution.

Section 61 must be construed in conjunction with § 126 of the 1902 Constitution. Section 126 mandates that "[t]he General Assembly shall provide by general laws for the extension and the contraction, from time to time, of the corporate limits of cities and towns; . . . ." Code § 15.1-1056[4] by implication authorizes annexation of an entire county. *See* C. Bain, Annexation in Virginia at 153-56 (1966), for a discussion of the history of Code § 15.1-1056. Without

---

[3] Va. Const. § 61 (1902) provides in pertinent part:

"No new county shall be formed with an area of less than six hundred square miles; nor shall the county or counties from which it is formed be reduced below that area; nor shall any county be reduced in population below eight thousand. . . ."

[4] Code § 15.1-1056 provides:

"Whenever, as the result of any annexation proceedings the area remaining in a county would, after annexation of the territory sought, be reduced below sixty square miles, . . . or shall, otherwise, be insufficient in area, population, or sources of revenue, adequately to support the county government and schools, the annexation shall not be decreed unless the whole county be annexed."

deciding whether § 61 is inapplicable to all annexation proceedings, we hold that it does not prohibit annexation of an entire county.

(c) Annexation of agricultural and forest lands.

The County also says that the Roanoke ordinance, including attached maps, is invalid because it shows that approximately 212.66 square miles (about 81%) of the territory sought are devoted to agricultural or forest uses. Under the provisions of Code § 15.1-1042(a) the annexation court is required to draw the lines of annexation "so that no land shall be taken into the city which is not adapted to city improvements, or which the city will not need in the reasonably near future for development, unless necessarily embraced in such compact body of land . . . ." We are of opinion, however, that these limitations are restricted to annexation of less than an entire county and that the provisions of Code § 15.1-1056 require annexation of an entire county under the circumstances specified therein, regardless of compactness, land use, or adaptability to city improvements or development.

We conclude, therefore, that the annexation court ruled correctly that it had jurisdiction to hear and decide all five annexation cases.

## II

### Consolidation Procedure.

These cases were ordered to be consolidated as required by Code § 15.1-1037(a). The annexation court set forth the procedure to be followed in an order entered on April 19, 1971, providing in pertinent part as follows:

". . . The City of Roanoke should first proceed to introduce its evidence for annexing the entire County; . . . during the presentation of the case for the City of Roanoke other parties should be allowed to cross-examine the witnesses for the City of Roanoke and introduce such evidence as they may defend against annexation of the entire County to the City of Roanoke and . . . if at the end of the case for the City of Roanoke it be determined that the entire County is not to be annexed then any petition area desiring to become a part of the City of Roanoke or the City of Salem shall be allowed to put on evidence in support of its case . . . ."

This order was endorsed by counsel for Roanoke, Salem, and the *Young, Willis, Weddle* and *Kinsey* petitioners without objection or

exception. The County endorsed the order with exception, but has not assigned error to the trial procedure.

On the opening day of the trial the presiding judge eliminated any doubt as to the interpretation of the order by stating that the trial court would first determine whether the entire County should go to Roanoke, or to Roanoke and Salem, and if not, then take up in order the different petitions. This procedure was defective, for we hold that Code § 15.1-1037(a) requires a more complete consolidation of the cases.

Nowhere in the annexation statutes is the term "consolidation" defined. However, Code § 15.1-1037(a) requires that, having consolidated the cases, the annexation court "shall hear them together, and shall make such decision as is just taking into consideration the interests of all parties to each case." The trial court's procedure of making sequential decisions does not fulfill this mandate. In a consolidated annexation proceeding, the evidence in each case may be relevant to the others, for the ultimate question for determination is what, if any, annexation should be awarded, considering all the evidence. It follows that, in order for the court adequately to consider the interests of all parties, all the cases should be fully heard before any decision is made.

The legislative history of Code § 15.1-1037(a) supports this construction. The statute in its present form was enacted as Code § 15-152.7 in 1952 (Acts of Assembly 1952, ch. 328) to correct a defect in the predecessor statute (§ 15-136, Code of 1950). Code § 15-136 required the annexation court in a consolidated case "to grant the petition of one and refuse the petition of the other regardless of whether the area should be split between the two." *Report of the Commission to Study Urban Growth*, House Document No. 13, at 10 (1951). Thus the purpose of present Code § 15.1-1037(a) is to establish a procedure that permits an annexation court to exercise wide discretion in determining to what extent, if any, territory should be annexed to competing cities. Such discretion can safely be exercised only after the court has heard the evidence of all the parties to an annexation proceeding. The only practical way for the annexation court to give proper consideration to all the conflicting and interrelated interests of the parties is to conduct a fully consolidated trial, where the evidence in one case becomes the evidence in the others. *See* Lile, Equity Pleading and Practice, Ch. XXV, §§ 339-51 (2d ed. 1922) § 341.

The proper procedure to follow in consolidated annexation cases, therefore, is to permit *all* proponents of *any* annexation to put on their evidence and then to allow all opponents to put on their evidence. The annexation court can then exercise its authority under Code §§ 15.1-1041-42 to determine whether there should be any annexation and, if so, how much. Nevertheless, we cannot hold that the trial court committed reversible error in following a consolidation procedure which, though inappropriate, was acquiesced in by all the appellants. As the case must be reversed on other grounds, however, the fully consolidated procedure herein approved should be followed upon remand.

### III

### The Roanoke Case.

(a)  The motion to strike Roanoke's evidence.

Under Code § 15.1-1041(b) the annexation court "shall determine the necessity for and expediency of annexation, considering the best interests of the county and the city or town, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county."

After Roanoke had concluded the presentation of evidence in support of its annexation ordinance adopted pursuant to the provisions of Code § 15.1-1033, the County's motion to strike the evidence was sustained "insofar and only insofar as it affects the annexation of the entire County" to Roanoke.

Where an annexation case has been fully heard, the judgment of the trial court will be sustained on appeal unless it is plainly wrong or without credible evidence to support it. *Johnson* v. *County of Fairfax*, 211 Va. 378, 384, 177 S.E.2d 606, 610 (1970). This rule is based on our construction of Code § 15.1-1049[5]. We hold, however, that the provisions of Code § 15.1-1049 do not apply to an annexation case where the plaintiff's evidence has been struck. Under these circumstances we view the evidence differently to determine whether Roanoke made out a prima facie case for annexation of all or any part of the County. All reasonable inferences which may be

---

[5] Code § 15.1-1049 provides in pertinent part:

"An appeal may be granted by the Supreme Court of Appeals, or any judge thereof, to any party from the judgment of the court and the appeal shall be heard and determined without reference to the principles of demurrer to evidence. The trial court shall certify the facts in the case to the Supreme Court and the evidence shall be considered as on appeal in proceedings under chapter 1.1 (§ 15-46.1 et seq.) of Title 25 of the Code of Virginia. . . ."

drawn from its evidence must be considered in the light most favorable to it. *Carter* v. *Miley*, 209 Va. 206, 208, 163 S.E.2d 151, 153 (1968).

We have heretofore admonished trial courts to overrule a motion to strike the plaintiff's evidence wherever any doubt exists. *Gray* v. *Van Zaig*, 185 Va. 7, 10, 37 S.E.2d 751, 752 (1946). In an annexation case, where heavy expenses are usually incurred by the litigants, there is even more reason for the trial court to exercise restraint in considering such a motion. Moreover, unless the case has been fully developed, we cannot bring the litigation to a final conclusion, as contemplated by Code § 15.1-1050[6], if we find it necessary to reverse the trial court. Although we affirmed the action of the annexation court in striking petitioners' evidence in *Higgins* v. *City of Roanoke*, 212 Va. 399, 184 S.E.2d 815 (1971), that case is inapposite here. There, the record showed no evidence as to the city's financial situation or its ability to furnish necessary services, essential factors in any annexation proceeding. In the present case Roanoke adduced evidence, including numerous exhibits embracing maps and charts and the testimony of experts and city officials, directed to every essential element of an annexation case.

The last substantial addition to Roanoke occurred in 1949 when 11.83 square miles were obtained through annexation, making a total area within the corporate limits of 26.68 square miles. Several small additional areas have since been annexed upon petitions of qualified voters, making the total area of Roanoke now 27.23 square miles, or 17,427 acres, of which 3,672 acres are gross vacant land. There are 2,761 net developable acres (15.8% of the total area) after excluding land with slopes of 20% or more and land covered by streams and rivers.

In 1950 the population of Roanoke was 91,921. From 1950 to 1960 the City's population grew 6% while that of the State grew 20%. In 1970 the population was 92,115, a decrease of 5% from 1960. The density was 5.29 people per acre, ninth highest among the cities in Virginia.

The true value of real estate assessments in Roanoke in 1962 was $452,175,425 and in 1970 $492,727,288, an actual decrease in view of inflation during the intervening years.

---

[6] Code § 15.1-1050 provides in pertinent part:

"If the judgment of the circuit court be reversed on appeal, or if the judgment be modified, the Supreme Court of Appeals shall enter such order as the circuit court should have entered and such order shall be final. . . ."

The County has an area of 262.63 square miles with a population in 1970 of 67,339. From 1950 to 1960 the population grew 32% and from 1960 to 1970 another 48%. Of its 168,083 acres, 104,376 acres (61.1%), lie in streams and rivers or on slopes of 20% or more, leaving approximately 64,000 acres. The true value of real estate assessments was $191,723,667 in 1962 and in 1970 approximately $460,-000,000.

The urban area of the County, extending across the floor of the Roanoke Valley to the foothills of the surrounding mountains, is 48 square miles with an estimated population of 56,000. Of 30,720 acres of usable land in the urban area, 12,439 acres are used for residential, commercial or industrial purposes.

The rural part of the County begins at the foothills and consists of three separated areas, Reed Mountain to the east of the urban area, Bent Mountain to the south of the Blue Ridge Parkway, and Fort Lewis Mountain, Catawba Valley, Mason Valley and Mason's Cove west and north of Salem and Interstate Highway 81. The rural areas comprise about 200 square miles, of which 52 square miles are farm land, with an estimated population of 11,300. According to Roanoke's evidence if only the rural areas remained outside the corporate limits after annexation, the County would incur an annual deficit of $555,-620, necessitating an increase in tax rate from $2.45 to $5.26 and making unfeasible the support of county government.

The evidence shows that Roanoke needs additional vacant land for residential, commercial and industrial development, a factor to be considered in an annexation proceeding. *County of Fairfax* v. *City of Alexandria*, 193 Va. 82, 68 S.E.2d 101 (1951).

The evidence shows a strong community of interest between Roanoke and the County, and this also is entitled to consideration. *City of Falls Church* v. *Board of Supervisors*, 193 Va. 112, 118, 68 S.E.2d 96, 100 (1951).

The annexation court must consider other factors, such as the size of the city, its crowded condition, its past growth, whether provision will be made for future management, the probable effect of the combination of the resources of two urban communities under one political unit, and the financial ability of the municipality to provide for development after annexation. *See County of Fairfax* v. *Town of Fairfax*, 201 Va. 362, 367, 111 S.E.2d 428, 432 (1959).

As is usually found in an annexation case the area on the periphery of Roanoke has become urbanized. It is apparent that in the Roanoke

Valley there are three urban areas, Roanoke, Salem and the urban territory of the County adjacent to either or both of the cities. Roanoke now sells water to the Town of Vinton and to approximately 5,000 other water customers in the County. Roanoke concedes that the County has an excellent school system and an efficient sheriff's department and that the County provides the services expected in an urban area, but the evidence also tends to show that Roanoke could provide more services of better quality.

Roanoke proposes to install sewers, storm drains, parks, fire stations, libraries and refuse disposal facilities, improve the systems of law enforcement, water, fire protection and street lighting and promote efficient city management and planning through a unified municipal government. The capital improvement program projected by Roanoke for the ensuing five years will require expenditures of $81,000,000, and Roanoke's evidence shows that the City can finance this expense. *Cf. City of Roanoke* v. *County of Roanoke*, 204 Va. 157, 129 S.E.2d 711 (1963), where Roanoke's then weak financial situation made annexation unfeasible, and *Higgins* v. *Roanoke, supra,* where there was no evidence of the financial ability of Roanoke to support the proposed annexation.

From a consideration of Roanoke's evidence as to the various relevant factors we conclude that the annexation court erred in sustaining the County's motion to strike. Roanoke made out a prima facie case, under the standards of Code § 15.1-1041(b), for annexing the entire County. The case may or may not be overcome, of course, by a preponderance of all the evidence upon remand. Moreover, as we have heretofore noted, this is a consolidated proceeding and the trial court should have heard all the evidence before making a decision as to what, if any, annexation should be awarded.

(b) Roanoke's motion to present additional evidence.

■ After the annexation court struck Roanoke's evidence for annexation of the entire county, Roanoke moved to present evidence for annexation of a lesser area. The court denied this motion, stating that the court had no power to hear such evidence:

"[W]hile it is quite true that Section 15.1-1042 of the 1950 Code of Virginia, as amended, empowers the Court to include a greater or smaller area than that described in the ordinance or petition, nevertheless, in the opinion of the Court this provision does not authorize the reopening of a case to hear evidence as to segments

of an area after a full hearing of the case for the entire area and the annexation thereof has been denied."

This ruling was erroneous. Code § 15.1-1042(a), which empowers the court to "include a greater or smaller area" than was sought, includes by implication the power to hear evidence that is essential for the awarding of a lesser area. If crucial evidence as to lesser areas could not be heard after denial of a city's original case, the purpose of Code § 15.1-1042(a) would be frustrated.

It is doubtful that during any annexation proceeding the proponent of annexation will make out a complete case for a lesser included area because of the financial variables. In this case, for example, Roanoke, seeking to annex the entire County, presented none of the evidence as to financial adjustments required for annexation of a lesser area because such financial evidence is irrelevant where an entire county is sought to be annexed. The trial court, therefore, after granting the motion to strike, had power to admit whatever additional evidence was required for the court to carry out its responsibilities under Code § 15.1-1042(a).

The case of *City of Norfolk* v. *County of Princess Anne*, 200 Va. 105, 104 S.E.2d 11 (1958), relied upon by the annexation court, differs materially from the present case and is not controlling. Also inapposite is *Bank of Giles County* v. *Mason*, 199 Va. 176, 98 S.E.2d 905 (1957), holding that no relief may be granted that does not substantially accord with the pleadings. Such a rule would be inconsistent with the annexation court's statutory powers under Code § 15.1-1042.

The trial court's assumption is untenable that Roanoke is entitled to either all it seeks under its annexation ordinance or nothing. The annexation court could find upon remand that, although the evidence has established necessity for and expediency of annexing a part of the County in addition to that ordered herein, it does not support annexation of the entire County. The court should thereupon require that the annexation lines be drawn accordingly and evidence taken as to financial adjustments and other factors required to enable the court to make an award.

Whether additional evidence should be received is a matter for determination within the discretion of the trial court. We do not agree with Roanoke's contention that Code § 15.1-1042(a) permits the City to present such evidence as a matter of right. A city should not

be allowed to introduce evidence for the annexation of an entire county and, failing in that, to adduce evidence for successively smaller areas until it finds one that will be approved. Such frivolous action could lead to almost interminable litigation and would defeat the intent of the statute vesting discretionary power in the trial court to adjust boundaries and to award more or less than is sought to be annexed.

## IV

### The Petition Cases.

(a) *Willis*

■ The day after the annexation court struck Roanoke's evidence, counsel for the *Willis* petitioners moved for dismissal of that petition on the ground that an "overwhelming majority" of his clients desired this action. The annexation court subsequently granted the motion over Salem's objection.

It is true that we have recognized the right of the plaintiff in an annexation case to take a non-suit over defendant's objection. *City of Norfolk* v. *County of Norfolk*, 194 Va. 716, 75 S.E.2d 66 (1953). We hold that this rule is inapplicable, however, where objection to the non-suit is made by a nominal defendant whose true posture is that of a party plaintiff. Because Salem's real interest was that of a plaintiff, the annexation court erred in granting the dismissal.

Salem, having annexed within the preceding five years, was under the interdiction of Code § 15.1-1055[7] and could not initiate annexation proceedings. It was a nominal defendant to the petition for annexation filed by the *Willis* petitioners under Code § 15.1-1034. Salem, however, supported the annexation and was prepared to offer evidence to show the necessity for and expediency of annexing the area.

Once a petition case has been instituted, it proceeds in the manner prescribed for annexation initiated by a city under Code § 15.1-1033. The proponents of annexation, petitioners and city, must carry the burden of proving the necessity for and expediency of the proposed annexation. *Johnson* v. *County of Fairfax*, 211 Va. 378, 382, 177 S.E.2d 606, 609 (1970); *County of Chesterfield* v. *Berberich*, 199 Va. 500, 502, 100 S.E.2d 781, 783 (1957). Often the city, as a non-

---

[7] Code § 15.1-1055 provides in pertinent part:

"No city or town, having instituted proceedings to annex territory of a county, shall again seek to annex territory of such county within the five years next succeeding the entry of the final order in any annexation proceedings . . . ."

adverse "defendant" supporting the proposed annexation, furnishes the critical evidence.

Thus we have acknowledged that when a city supports the petition of qualified voters seeking annexation, in effect it assumes the position of a party plaintiff. Accordingly, we hold that petitioners for annexation may not compel dismissal of the petition over the objection of the city after the city has pleaded in support of the annexation. We conclude that the annexation court committed reversible error in dismissing the *Willis* petition on petitioners' motion over the objection of Salem.

(b) *Weddle* and *Kinsey*

■ In *Weddle* and *Kinsey* the evidence was fully developed by proponents and opponents of annexation. Some of the petitioners testified in favor of the annexations, asserting that they desired to be annexed into Roanoke, that they had a community of interest with the city, and that the area needed the quality of services that Roanoke could furnish. No evidence was introduced by petitioners concerning financial adjustments, effect upon the County, compensation to the County, or the ability of Roanoke to finance the annexation. At the conclusion of petitioners' evidence the court overruled the County's motion to strike and permitted Roanoke to adduce evidence in support of the *Weddle* and *Kinsey* petitions, to which action the County has assigned error.

As we have stated in reference to the *Willis* petition, a defendant municipality in an annexation case becomes a proponent whenever it pleads in support of the annexation. Therefore, Roanoke had the right to put on evidence in support of the *Weddle* and *Kinsey* petitions, and the motion to strike petitioners' evidence was correctly overruled.

■ The County assigns error to the *Weddle* and *Kinsey* awards on the ground that the evidence was insufficient to support any annexation. We do not agree. The trial court, in finding the necessity for and expediency of annexing "some additional vacant or undeveloped land and industrial sites," resolved all conflicts in the evidence on this issue against the County.

There is ample evidence to support this finding. The record shows that Roanoke has a critical need for vacant land, that its population is declining while that of the surrounding area is rapidly increasing, and that there is a need for centralized and unified planning for the urban core of the County.

The County argues, however, that the *Weddle* and *Kinsey* areas are "substantially developed" and would, if awarded in their entirety, increase the vacant land in Roanoke by only 1%, while the County would lose 12% of its commercial and industrial development, one-third of its sales tax revenue, and 20% of its business and professional license fees. But the County's own evidence shows that the areas sought in *Weddle* and *Kinsey* were 40% and 34%, respectively, vacant and agricultural lands. Thus they offer at least a partial answer to Roanoke's land needs. Moreover, the court did not award the entire areas sought, but excluded substantial territory, including the Crossroads Mall Shopping Center, the principal source of revenue in the areas.

Roanoke and the *Weddle* and *Kinsey* appellants assert that the annexation court erred in not awarding all of the area sought in the *Weddle* and *Kinsey* petitions. The court partitioned these areas pursuant to Code § 15.1-1042(a), which vests wide discretion in the trial court in determining the area to be awarded, the principal guide to decision being that the court "shall balance the equities in the case." On appeal we may reverse the trial court only for abuse of discretion. In the case of the *Weddle* petition area, however, we agree with Roanoke that the entire area should have been annexed.

The *Weddle* area as awarded contains only .435 square miles of the 2.33 square miles sought and adds to Roanoke only 12 residents, none of whom is a petitioner. The area comprises principally a portion of the Norfolk & Western Railway yards, not susceptible to further development, and a small industrial park, developed primarily by Roanoke, which offers some space for light industry. The court excluded from the award substantial undeveloped lands along Route 11 and Deyerle Road which, according to uncontradicted evidence, are suitable for development for residential, commercial, or light industrial purposes.

Thus, the *Weddle* award area, a small fraction of the area sought, is generally unsusceptible to further development. Most of the developable land in the petition area is excluded from the award. The award is completely inconsistent with the trial court's finding that Roanoke needs additional vacant land for development. We conclude that the *Weddle* award is insufficient as a matter of law. As the evidence as to this area has been fully developed, we will reverse the trial court and award the entire *Weddle* area to Roanoke.

We cannot hold as a matter of law that the entire *Kinsey* area should be granted to Roanoke. The area awarded contains 2.16 square miles of the 2.87 square miles sought. The award excludes the Cross-roads Mall Shopping Center and farmland, but includes 314 residents, the Roanoke municipal airport, a country club, two Roanoke schools, a trailer park, and little vacant land. There is no evidence, however, that the trial court, in excluding farmland, eliminated vacant developable land, as it did in the *Weddle* case.

The annexation court justified the exclusion of the Crossroads Mall Shopping Center from the *Kinsey* area on economic grounds, stating that the loss of this asset would seriously impair the County's ability to continue to furnish urban services, "especially education." Revenue considerations, however, are not determinative either for or against annexation. *Rockingham County* v. *Timberville*, 201 Va. 303, 308, 110 S.E.2d 390, 394 (1959).

The record shows the necessity for and expediency of annexing substantially more than the entire *Weddle* area and the portion of the *Kinsey* area that was awarded. We will refrain from ordering the annexation to Roanoke of the entire *Kinsey* area sought because we cannot determine whether this will make available what Roanoke has been found to need. As the proceeding must be remanded on other grounds, we will direct the trial court to determine what territory shall be annexed to Roanoke in addition to the entire *Weddle* area and that portion of the *Kinsey* area previously awarded.

## V

### Further Proceedings Upon Remand.

For the errors herein set forth we will reverse the final order of the trial court, award to Roanoke the *Weddle* area sought to be annexed and the portion of the *Kinsey* area awarded by the trial court, and remand the proceeding to the trial court to determine from a preponderance of all the evidence:

(a) whether Roanoke has proved the necessity for and expediency of annexation of the entire County; and, if not,

(b) what area or areas in addition to the *Weddle* and *Kinsey* areas herein awarded shall be annexed to Roanoke and whether Salem has proved the necessity for and expediency of annexation of the *Willis* area, or a greater or lesser area; and,

(c) where the annexation lines shall be drawn and what financial adjustments shall be made.

*Reversed and remanded.*